STATE, Respondent v. HOOVER, Appellant

(236 N.W.2d 635)

(File No. 11538. Opinion filed December 12, 1975)

Laurence J. Zastrow, Rapid City, for defendant and appellant.

William J. Janklow, Atty. Gen., R. Greg Bartron and Doyle D. Estes, Asst. Attys. Gen., Pierre, Michael McGreevy, Pennington County Deputy State's Atty., Rapid City, for plaintiff and respondent.

WINANS, Justice.

George Davis, of Rapid City, South Dakota, owns and operates a trucking firm which is a contract carrier for the John Morrell Company of Sioux Falls. On Friday, November 23, 1973, one of his tractor-trailers, driven by Jackson Young, was loaded at Sioux Falls with Morrell meats, sealed and padlocked, and was driven back to the Davis Trucking Company lot in Rapid City. It arrived there about 10:30 that evening at which time Young checked the seals and locks and then secured the padlock on the gate of the six-foot fence which surrounds the company lot. On Sunday morning, November 25, when Davis and two of his employees arrived at the lot they discovered that the trailer had been broken into and a large quantity of meat stolen from it. It was estimated that the amount of missing meat was between 3,000 and 4,000 pounds and was worth in the neighborhood of $5,100. Taken were lunch meats in large red, white and blue boxes with Morrell hearts on the sides, and roasts, sirloins and rib eyes in white boxes without distinctive coloring and markings. Attached to each box was an IBM card indicating the destination of the load and the shipping date.

On Tuesday, November 27, 1973, Deputy Sheriff Dave Bintliff interviewed a Betty Mehrer. Based on the information she provided he obtained search warrants for the residences of Patty Sherman, Norbert Grismer, Darrell Beck, Elizabeth Eslinger, Judy Flater, and Mr. Grismer's business, known as Mr. Mike's Hair Styling. Deputy Bintliff executed the warrant at the home of Judy Flater opposite the Rimrock Shopping Center and there found sizeable quantities of meat in Morrell packaging both in a freezer in the house and in an outdoor shed. This meat was brought to the Pennington County Jail and identified by George Davis as being part of the missing shipment. Photographs of the meat removed from the Flater residence were taken and admitted as state's exhibits # 2, 3 and 4. Apparently because of the

perishable nature of their contents the actual boxes of the meat taken were not introduced at trial.

Pennington County Deputy Sheriff Pat Burke executed a search warrant at the home of Darrell Beck and there found a large supply of meat shown as state's exhibits # 5 and 6 by photograph. There was no indication on the meat packages that they contained Morrell meats. These individual cuts were wrapped only in white freezer paper.

Deputy Sheriff Don Phillips executed search warrants at the home of Norbert Grismer and at his business establishment, Mr. Mike's Hair Styling. The search warrants were later suppressed but Deputy Phillips testified at the trial that he found at the Grismer residence "several boxes labeled Morrell Meats. We found a deep freeze containing a large amount of meat, some of it had been freshly wrapped. A lot of the meat was—had the Morrell labels on it." State's exhibit # 1, a box of Morrell bologna taken from the Grismer residence, was admitted without objection.

Warrants were issued for Randall Gene Hoover, defendant-appellant in this case, for Dennis Soule and for John Harmon. They were arrested at Oregon, Missouri, December 17, 1973, and returned to South Dakota. Hoover was brought before the Rapid City Municipal Court on a charge of third degree burglary on December 20, 1973, and given appointed counsel. A preliminary hearing was held in that same court on January 17, 1974, jointly with codefendants Soule and Harmon and Appellant was bound over to Circuit Court. On January 30, 1974, he was arraigned before Judge Parker in Circuit Court and entered a plea of not guilty to the charge in the information. Twice subsequently the information was amended and each time he pled not guilty to the amended information. Trial for the appellant was originally scheduled for February 19, 1974, and rescheduled for April 22, 1974, and finally held before Judge Vernon C. Evans at Rapid City on May 20 and 21, 1974. Appellant Hoover's trial was severed from that of codefendants Soule and Harmon. Having deliberated for about an hour and a half, the jury on May 21, 1974, returned a verdict of guilty and on June 14, 1974, Judge Evans sentenced Appellant to eight years in the South Dakota State Penitentiary.

Defendant-Appellant Hoover presents us with nine issues of possible error by the trial court. While we acknowledge that two issues raised have at least the appearance of error we nevertheless affirm the decision of the court below because of the harmless nature of that error. Defendants are not assured a perfect trial but each must be afforded a fair trial and we are convinced that Defendant Hoover in this case was afforded the fair trial to which he was entitled.

■ Hoover first charges that the trial court erred in overruling his motion to strike the name of witness Norbert Grismer which was endorsed upon the amended information after it was filed only three days in advance of the re-rescheduled trial. On May 15, 1974, Deputy State's Attorney McGreevy had filed with the Court a motion to endorse on the information the name of Norbert Grismer as a witness. Defendant's counsel objected and a hearing was held on May 17. The prosecutor promised Defendant's counsel a copy of Grismer's written statement to be taken later that day and the Court advised the prosecutor to tell Grismer to make himself available for an interview with defense counsel. The Court then allowed the endorsing of Grismer's name as a witness. Over the weekend Grismer refused to discuss his testimony with defense counsel. The promised copy of his written statement was not forthcoming either. At the start of the trial on May 20 the trial court refused to grant Defendant's motion to strike Grismer from the information and he proceeded to testify for the State against Defendant. It has continually been our holding with regard to the endorsing of additional witnesses upon an information that "[t]he ruling on such motions is largely within the discretion of the trial court, and unless an abuse of the court's discretion or bad faith of the state's attorney results in substantial prejudice to defendant, the ruling is not erroneous or grounds for reversal." *State v. Burke*, 1972, 86 S.D. 737, 201 N.W.2d 234. In this case no bad faith upon the part of the state's attorney's office is shown. Defendant's counsel had been informed at the hearing on the motion to endorse that Grismer would testify that he bought meat from the defendant. This was the substance of Grismer's very brief testimony. Defendant could have moved for a continuance to prepare better for Grismer's testimony and he could have remade his motion to strike the

testimony if he could have shown prejudice, as Judge Evans noted when he denied the motion to strike the endorsement, but he chose to do neither. Defendant was sufficiently apprised of the identity of the state's witness and of the content of his testimony and we cannot say that he was substantially prejudiced in any way by the late endorsement. His objection, therefore, fails.

■■■ Defense counsel next points out that SDCL 23-42-6 in directing the order of a jury trial says in part that

"* * * the trial must proceed in the following order:

(1) If the indictment or information is for a felony, the clerk or state's attorney must read it and state the plea of the defendant to the jury. In all other cases this formality may be dispensed with."

The trial of Appellant did not conform exactly to this section of the statute and he proposes this slight deviation as reversible error. After the selection of the jury, the state's attorney was directed to read the information to the defendant and the jury. When the information had been read the following interchange took place:

"BY THE COURT: And did you wish to state the defendant's plea?

BY MR. CARRELL [Defendant's appointed counsel]: What's that Your Honor?

BY THE COURT: Did you wish to state what the defendant's plea was to this information?

BY MR. CARRELL: And to that information the defendant entered a plea of not guilty Your Honor."

The case of *Territory v. King*, 1889, 6 Dak. 131, 50 N.W. 623, was an instance of the complete failure of the state to have the indictment and plea read to the jury in accordance with Code Crim.Proc.Dak. § 343 which is virtually the same as the above-cited SDCL 23-42-6(1). There the Court held that

"[t]he failure of the district attorney to formally read the indictment and state the plea to the jury after they were sworn was not error, as the record shows that the jury were sufficiently informed of the nature of the charge against the plaintiff in error, and also of his plea,—the character of his defense."

In *King* it "appeared that the prosecuting attorney, in impaneling the jury, stated to each member thereof the nature and circumstances of the offense charged, the name of defendant, and the person on whom the assault was made; that, after the jury had been impaneled and sworn, he stated to them in substance the allegations of the indictment, and that defendant had entered a plea of not guilty thereto." In the case at bar it is evident from the record that the state's attorney read the information to the jury and that in his opening statement the prosecuting attorney said: "The information that was just read, as you know, to that information the defendant has pled not guilty." We are of the opinion that this issue falls squarely within the holding of *Territory v. King*, supra, and that no prejudicial error was committed in the Court's invitation to defense counsel to state Appellant's plea. The jury was adequately apprised at the beginning of the trial by the deputy state's attorney of the information and the plea and it is inconceivable that his own counsel's response to the Court's inquiry could in any way have harmed Appellant.

■ Appellant goes on to charge that the trial court erred in failing to admonish the jury to disregard stricken testimony. During the testimony of George Davis the prosecutor asked:

"Q Thank you. Now prior to November 25, 1973, had you ever been burglarized before?

A Yes I did." [sic]

Defense counsel immediately moved to strike the answer, not on the grounds that it was not responsive, but because it was irrelevant and immaterial. The motion was granted but the trial judge failed to admonish the jury to disregard this interchange. We agree with the Virginia Court in *Coffey v. Commonwealth*, 1949, 188 Va. 629, 51 S.E.2d 215 that "[t]he striking or the

withdrawal of such evidence from consideration of the jury must be made in positive, comprehensive and explicit terms." Failure to follow the grant of a motion to strike with an admonition to the jury to disregard could well be prejudicial in any number of situations but in the case now before us we do not find it to be such. It was, instead, harmless error. Harmless error was well explained in *Kotteakos v. United States*, 1946, 328 U.S. 750, 66 S.Ct. 1239, 90 L.Ed. 1557. There, speaking for the Court, Mr. Justice Rutledge stated the test as follows:

> "But if one cannot say, with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error, it is impossible to conclude that substantial rights were not affected. The inquiry cannot be merely whether there was enough to support the result, apart from the phase affected by the error. It is rather, even so, whether the error itself had substantial influence. If so, or if one is left in grave doubt, the conviction cannot stand."

This Court on numerous occasions has committed itself to that principle (see *State v. Ballard*, 1948, 72 S.D. 293, 33 N.W.2d 339; *State v. Reddington*, 1963, 80 S.D. 390, 125 N.W.2d 58) and we are bound to it by SDCL 23-1-2 which states:

> "Neither a departure from the form or mode prescribed in this title in respect to any pleading or proceeding nor an error or mistake therein renders it invalid, unless it has actually prejudiced the defendant or tended to his prejudice, in respect to a substantial right."

Next, it is alleged that the trial court was in error in allowing the state's witness, Betty Mehrer, to testify to the "substance" of her conversation with Defendant-Appellant. At trial Mehrer testified as follows:

> "Q Mrs. Mehrer at this time and place would you relate the conversation that you had with the defendant?

A We had been talking about the meat run they were
going to make that night."

This is the total of her challenged testimony on the "substance" of the conversation she had with Appellant. Contrary to the allegation of Appellant's counsel, this was not testimony concerning an overheard conversation. It was Betty Mehrer's testimony about the conversation she herself had in the Anchor Bar with Randall Hoover. When part of a conversation, transaction, or writing is introduced by one party on either direct or cross-examination, the other party may, as a rule, introduce the entire conversation, transaction or writing. 1 Wharton's Criminal Evidence p. 296, § 162. It was up to the Defendant-Appellant to bring out on cross-examination the details of this conversation which the witness either did not provide or perhaps was unable to provide. It was not the duty of the prosecutor to elicit anything more than the witness said she could remember. The trial court committed no error in allowing the testimony in question.

As his fifth point Appellant urges us to find that the trial court erred in admitting certain photographs of meat packages and boxes when no testimony was offered that the photographed meat was property taken from the Davis trailer. We have examined the record carefully and note that the state's exhibits # 5 and 6 are pictures taken of packages of meat wrapped in white freezer paper taken from the home of Darrell Beck. It is not here contended that the pictures themselves were admitted without proper foundation. What Appellant argues is that the pictures are of certain packages of meat which was never identified as meat taken from the Davis trailer, nor was it stated that the meat was ever in the possession of Randall Hoover, nor even that it was John Morrell meat. The jury was presented with a large amount of meat and given the impression that it was part of the Morrell meat taken from Davis and sold to Beck at a low price but there was never any testimony on this to substantiate the suspicion or to be submitted to cross-examination. It is settled law that the same rules of admissibility applicable to objects connected with the crime apply to photographs of such objects. 23 C.J.S. Criminal Law § 852(1)a. In a prosecution for the

offense of burglary where the State relies upon the defendant's recent possession of goods allegedly stolen or feloniously taken for conviction, it is absolutely essential that the identity of the stolen articles be indisputably identified. *Jones v. State,* 1962, 106 Ga.App. 614, 127 S.E.2d 855. Because the State failed to identify properly the meat in the pictures as being material to the case the pictures of the meat were improperly admitted and in this regard the trial court was clearly erroneous. We feel confident after reviewing all that transpired in the course of the trial in saying that the verdict was not substantially swayed by the error. The error was therefore harmless and nonprejudicial.

 The appellant next contends that the giving of Instruction # 25 to the jury by the Court over the defense counsel's objection was error. The instruction in question is as follows:

"Flight by the defendant, after the crime has been committed, does not create a presumption of guilt. You may consider evidence of flight, if any, however, as tending to prove the defendant's consciousness of guilt. You are not required to do so. You should consider and weigh evidence of flight by the defendant in connection with all the other evidence in the case and give it such weight as in your judgment it is fairly entitled to receive."

Testimony was given by Deputy Sheriff Bintliff that Appellant was not to be found in Rapid City and was arrested in Missouri two or three weeks after the meat disappearance and defense counsel in his brief concedes that "most of the cases conclude that there was sufficient evidence to warrant an Instruction such as was given." While we might well be in accord with the Colorado Supreme Court in *Robbins v. People,* 1960, 142 Colo. 254, 350 P.2d 818, where it held that a flight instruction "is rarely advisable and should never be given unless the peculiar facts of the case appear to make it essential" we are of the opinion that in the instant case, just as in *Robbins,* the giving of the flight instruction did not constitute prejudicial error.

 In his seventh issue Defendant-Appellant Hoover asserts that the trial court erred in taking and recording the jury

verdict by failing to comply with the mandatory requirements of SDCL 23-45-26. There it is provided that

"[w]hen the verdict is given, and is such as the court may receive, the clerk must immediately record it in full upon the minutes, and must read it to the jury and inquire of them whether it is their verdict."

It cannot be denied that this was not done at the Hoover trial. Instead, the trial transcript shows that the following took place:

"BY THE COURT: And what is the verdict of the jury?

BY THE FOREMAN: Guilty of burglary in the third degree.

BY THE COURT: You may be seated. Does the counsel for either party wish the jury to be polled?

BY MR. McGREEVY: No Your Honor.

BY MR. CARRELL: No Your Honor.

BY THE COURT: The clerk will enter the verdict of guilty upon the minutes. I wish to thank the jury for their time and effort * * *. Court is adjourned."

We do not deny Appellant's proposition that the requirement that the jury affirm the verdict is long established and failure to comply with the requirement is reversible error. This is a safeguard built into our trial procedure for obvious reasons. It affords the jurors an opportunity to express their dissent from a written verdict in which they do not concur when it is delivered and read in open court. However, in the factual setting of this trial the Court offered both sides full opportunity to poll the jury in order to ascertain with greater certainty the accuracy of the verdict and both sides declined to do so. Having thus affirmatively waived his statutory right Defendant will not now be heard to make this objection on appeal.

We have examined Appellant's two remaining issues concerning the remoteness in some of the substance of Regina Brennan's

testimony and the trial court's refusal to grant a motion for a directed verdict and we find them to be without merit.

Affirmed.

DUNN, C. J., and WOLLMAN and DOYLE, JJ., concur.

COLER, J., concurs specially.

COLER, Justice (concurring specially).

While I agree with the result reached by the majority opinion, I do not agree with the language of the opinion which appears to announce that it is "reversible error" for the clerk of courts to fail to inquire of the jury whether the announced opinion is theirs, pursuant to SDCL 23-45-26, but that requirement is waived by reason of appellant's failure to poll the jury, a right granted by SDCL 23-45-25, which is a right to be exercised before the clerk records the verdict pursuant to SDCL 23-45-26.

The proceedings in this case were in compliance with SDCL 23-45-8, 23-45-25 and 23-45-26 with the exception that the clerk neglected to read back the verdict to the jury and inquire of them whether it was their verdict. SDCL 23-45-26. Absent a showing that such was not the jury's verdict, a fact which could only be made to appear had appellant demanded a poll of the jury when the right was timely afforded, "we must accept the record as reflecting the true finding of the jury," *King v. Jameson*, 1944, 69 S.D. 565, 13 N.W.2d 46, and appellant's collateral attack must fail. Further, as indicated in another point by the majority opinion, the failure of the clerk to perform this ritual is not such a substantial departure from form or mode of proceeding as to have prejudiced the appellant's substantial right. SDCL 23-1-2.