2001 SD 27

**STATE of South Dakota, Plaintiff and Appellee,**

v.

**Michael A. FENDER, Defendant and Appellant.**

**No. 21339.**

Supreme Court of South Dakota.

Considered on Briefs Nov. 27, 2000.

Decided March 7, 2001.

fused to attend.

Mark Barnett, Attorney General, Frank Geaghan, Assistant Attorney General, Pierre, SD, Attorneys for plaintiff and appellee.

Gary G. Colbath, Jr. of Banks, Johnson, Colbath, & Kerr, Rapid City, SD, Attorneys for defendant and appellant.

MILLER, Chief Justice.

[¶ 1.] In this appeal, we affirm Michael Fender's grand theft conviction, and hold that the evidence was sufficient to sustain the jury verdict, the State did not improperly withhold evidence and the giving of a flight instruction was not prejudicial error.

### FACTS

[¶ 2.] On Monday, March 8, 1999, Fender was a manager of the Mount Rushmore Road Taco Bell in Rapid City, South Dakota. He testified that he arrived to open the store at 7:55 a.m. and began his morning routine of paperwork and readying the store for business. Part of the process involves accessing the safe to get money for the day's operations. The safe, which consists of an inner and outer door, must be accessed by a precise

procedure involving a ten-minute wait between the opening of the outer door and the opening of the inner door.

[¶ 3.] Fender later told law enforcement officers that he accessed the safe about 8:40 a.m. and found that the money deposits from the weekend were missing. He called Mary Parker, the manager who closed the night before, to inquire about the missing money. She had no knowledge and told him to call the security company. Before calling the security company, Fender called his district manager, Pam Hare, who was at a conference in Nashville, Tennessee. She also told Fender to call the security company, because they would know whose code was last used to enter and exit the building. Fender seemed surprised when he learned of these security precautions. Fender called the security company and then called the police. The police arrived and began investigating. Lisa Treadwell, the owner's wife, and Parker also arrived to assist in the investigation.

[¶ 4.] The security company records indicate that Fender's individual security code was used that morning to enter the store at 7:09 a.m. and to exit it at 7:22 a.m. Although this information was obtained the morning of the theft, Fender denied any involvement, continued working at that Taco Bell as a manager and was not initially the focus of the detective's investigation. He even received a salary increase after the theft.

[¶ 5.] In April of 1999, the detective contacted Andrea Wessel, a former friend of Fender's, who was on work release from the Pennington County Jail, to gain information about Fender. She had a conversation with Fender in which he told her he was planning to leave for North Carolina with his mother. He swore her to secrecy and indicated he was nervous because he believed the police were after him. She tape recorded the conversation and turned it over to the detective. Based on the tape, the detective obtained an arrest warrant for Fender. He was arrested in Custer, South Dakota while loading furniture to move to North Carolina.

[¶ 6.] The case was tried to a jury which returned a verdict finding Fender guilty of grand theft. He received a five year sentence with three years suspended on the condition he make restitution in the amount of $5,709.94.

## DECISION

[¶ 7.] **1. The evidence supports the jury's verdict.**

[¶ 8.] When reviewing a challenge to the sufficiency of the evidence, the question this Court examines is " 'whether there is sufficient evidence in the record which, if believed by the jury, is sufficient to sustain a finding of guilt beyond a reasonable doubt....' " *State v. Edelman*, 1999 SD 52, ¶ 4, 593 N.W.2d 419, 421 (citations omitted). In this process, " 'we accept the evidence, and the most favorable inference fairly drawn therefrom, which will support the [jury's] verdict.' " *Id.* To convict a defendant upon circumstantial evidence alone, the prosecution must show " 'such facts and circumstances as are consistent with each other and with [the] guilt of the party charged, and such as cannot by any reasonable theory be true and the party charged be innocent.' " *State v. Esslinger*, 357 N.W.2d 525, 530 (S.D.1984) (citations omitted). However, the evidence need not exclude all possible hypotheses of innocence, only reasonable hypotheses of innocence. *State v. Robb*, 303 N.W.2d 368, 371 (S.D.1981).

[¶ 9.] The jury heard evidence indicating that Fender's individual security access code had been used to enter and leave the building early in the morning the day of the theft. They also heard evidence that although Fender alleged two others knew his access code, those individuals were not in town at the apparent time of the theft. Furthermore, the jury heard evidence of Fender's strange behavior the morning of the incident and of his plan to

leave town without notifying his employer. Sufficient evidence exists to support the jury's verdict.

### [¶ 10.]   2. Fender did not suffer a violation of due process.

[¶ 11.] The prosecution never disclosed the tape recorded statements Fender made to Wessel and the prosecutor never disclosed the alleged taped conversations Fender had on Taco Bell work phones. Fender argues that the prosecutor's failure to disclose these tape-recorded statements constitutes a violation of his due process rights. He correctly points out that the *Brady* rule applies to situations where the prosecution suppresses exculpatory evidence to the detriment of the defendant. *Brady v. Maryland*, 373 U.S. 83, 87, 83 S.Ct. 1194, 1196–97, 10 L.Ed.2d 215, 218 (1963). We have noted on numerous occasions that the *Brady* rule only applies to situations where the defendant discovers *after* trial that the prosecutor had material evidence that was not disclosed during the trial. *State v. Knecht*, 1997 SD 53, ¶ 18, 563 N.W.2d 413, 420 (citing *State v. Fox*, 313 N.W.2d 38, 40 (S.D.1981); *State v. Moves Camp*, 286 N.W.2d 333, 339 (S.D.1979); *State v. Sahlie*, 277 N.W.2d 591, 596 (S.D.1979)).

[¶ 12.] Fender does not contend he learned of the alleged suppressed evidence after trial. In fact, he notes that he became aware of his tape-recorded statements during the trial. Accordingly, we need not reach the four-part test for determining if a due process violation occurred. *See id.* ¶¶ 17–18; *Ashker v. Solem*, 457 N.W.2d 473, 477–78 (S.D.1990).

[¶ 13.] SDCL 23A–13–15 specifically addresses the situation Fender describes. It provides:

If, prior to or *during* trial, a party discovers additional evidence or material previously requested or ordered, which is subject to discovery or inspection under §§ 23A–13–1 to 23A–13–14, inclusive, he *shall promptly notify the other party or his attorney or the court* of the existence of the additional evidence or material.

SDCL 23A–13–15 (emphasis added). This statute initially obligated the State's Attorney to disclose the previously requested discovery materials. Additionally, during the trial, it obligated Fender to notify the trial court when he became aware of his tape-recorded statements, which had not been previously disclosed. The trial court then could have taken action pursuant to SDCL 23A–13–17, which provides:

If, at any time during the course of a proceeding, it is brought to the attention of a court that a party has failed to comply with an applicable discovery provision, the court may order such party to permit the discovery or inspection, grant a continuance, or prohibit the party from introducing evidence not disclosed, or it may enter such other order as it deems just under the circumstances. The court may specify the time, place and manner of making the discovery and inspection and may prescribe such terms and conditions as are just.

Since Fender did not take the appropriate action at the trial level, he did not preserve it for our consideration.

### [¶ 14.]   3. Giving of flight instruction was not reversible error.

[¶ 15.] Fender contends that the trial court erred in giving a flight instruction in his case.[1] We have warned trial courts that the flight instruction "should be used sparingly and only when the special circumstances and evidence require."

---

1. The flight instruction stated:

   Flight by the defendant, after the events charged in the Information occurred, does not create a presumption of guilt. You may consider evidence of flight, however, as tending to prove the defendant's consciousness of guilt. You are not required to do so. You should consider and weigh evidence of flight by the defendant in connection with all the other evidence in the case and give it such weight as in your judgment it is fairly entitled to receive.

*State v. Menard,* 424 N.W.2d 382, 384 (S.D.1988). A challenging party, however, must show prejudicial error to win a reversal on appeal. *State v. Fast Horse,* 490 N.W.2d 496, 500 (S.D.1992) (citation omitted). "The inquiry in this regard is whether, absent the alleged error, it is clear beyond a reasonable doubt the jury would have returned a guilty verdict." *Id.*

[¶ 16.] The evidence disclosed that Fender told Wessel that he was worried the police were coming after him for the theft, that he would be moving to North Carolina soon and that she should not tell anyone he was leaving. Additionally, the detective testified to the conversation he had with Fender while transporting him to jail after his arrest. Fender admitted to the detective that he was leaving town for North Carolina and had not planned to inform his employer.

[¶ 17.] Based on this evidence, the giving of the flight instruction was not error.

[¶ 18.] Affirmed.

[¶ 19.] KONENKAMP and GILBERTSON, Justices, concur.

[¶ 20.] SABERS and AMUNDSON, Justices, dissent.

SABERS, Justice (dissenting).

[¶ 21.] I agree with Justice Amundson's dissent that the jury was improperly instructed on flight. I write separately to reiterate that such instructions should be cautiously applied. A sparing approach to such an instruction is required. *State v. Menard,* 424 N.W.2d 382, 384 (S.D.1988). It is troubling that despite our cautionary warning these instructions have been readily made available to the jury. *See State v. Frazier,* 2001 SD 19, ¶¶ 59–61, 622 N.W.2d 246 (Sabers, J., dissenting).

[¶ 22.] An instruction on flight is always collateral to the primary issue of whether a crime was committed by this defendant and therefore is "only marginally probative as to the ultimate issue of guilt or innocence." *United States v.*

*Myers,* 550 F.2d 1036, 1050 (5th Cir.1977). Such an instruction highlights to the jury collateral evidence as "consciousness of guilt" and diminishes the burden of demonstrating "guilt beyond a reasonable doubt" and throws out the "presumption of innocence." As stated in *Frazier,* "we have recently unanimously reversed under somewhat similar downplaying of these two key instructions." *Frazier,* 2001 SD 19, ¶ 60, 622 N.W.2d 246 (Sabers, J., dissenting) (citing *State v. Nelson,* 1998 SD 124, ¶ 20, 587 N.W.2d 439, 447). We should also reverse where, as here, the presumption of innocence instruction is diluted by other instructions. Under the evidence adduced at trial, it was error to instruct the jury that they could infer from Fender's actions he committed the crime charged.

[¶ 23.] Therefore, I respectfully dissent and would reverse and remand for a new trial.

AMUNDSON, Justice (dissenting).

[¶ 24.] In three prior decisions, this Court has addressed the issue of flight instructions. In *State v. Fast Horse,* 490 N.W.2d 496 (S.D.1992), *State v. Waller,* 338 N.W.2d 288 (S.D.1983) and *State v. Hoover,* 89 S.D. 608, 236 N.W.2d 635 (1975), the following instruction was given:

> Flight by the defendant, after the crime has been committed, does not create a presumption of guilt. You may consider evidence of flight, if any, however, as tending to prove the defendant's *consciousness of guilt.* You are not required to do so. You should consider and weigh evidence of flight by the defendant in connection with all the other evidence in the case and give it weight as in your judgment it is fairly entitled to receive.

In each of these appeals, this Court affirmed the defendant's conviction. In doing so, however, this Court found error by the trial court in giving such instruction. Nevertheless, we found that error to be

harmless or non-prejudicial, resulting in an affirmance.

[¶ 25.] Each time we have analyzed the appropriateness of the giving of this flight instruction, we began with the following mantra: "we might well be in accord with the Colorado Supreme Court in *Robbins v. People,* 1960, 142 Colo. 254, 350 P.2d 818, where it held that a flight instruction 'is rarely advisable and should never be given unless the peculiar facts of the case appear to make it essential'...." *See Fast Horse,* 490 N.W.2d at 501; *Waller,* 338 N.W.2d at 291; *Hoover,* 236 N.W.2d at 640–41. This Court has also stated that the giving of such instruction should be "used sparingly and only when the special circumstances and evidence require." *Fast Horse,* 490 N.W.2d at 502. Words like "essential," "rarely advisable," "sparingly" and "special circumstances" quickly rise to the surface. Are the words contained in these statements: statements of law or mere platitudes? If they are the former, we should abide by what we say and mandate trial courts to heed our warning. If they are the latter, we should abandon such hollow legal cliches and allow courts to use the instruction anytime a criminal defendant leaves the scene of the crime. I submit that the former is the better course to follow.

[¶ 26.] In the case at hand, one undisputed fact is clear: Fender did not leave the jurisdiction. A court should not instruct on "flight" without having actual flight.[2] The Court of Appeals for the Eighth Circuit has stated that "the inference of guilt that may be drawn by the fact of flight only arises 'immediately after the commission of a crime, or after [a defendant] is accused of a crime that has been committed.'" *United States v. White,* 488 F.2d 660, 662 (8th Cir.1973). "The requirement of immediacy of flight is greatly diminished, however, when the defendant knows that he is accused of or sought for the crime charged." *Waller,* 338 N.W.2d at 292 (citing *United States v. Hernandez–Miranda,* 601 F.2d 1104 (9th Cir.1979); *United States v. Jackson,* 572 F.2d 636 (7th Cir.1978)). At the time of the alleged "flight," Fender was neither accused of a crime nor out on bond.

[¶ 27.] Despite prior precedent, the majority submits that hearsay statements made by Fender to the arresting officer were the basis for the flight instruction. Evidence of flight is properly admitted only if the government can prove with direct evidence that the defendant knows he is being sought for the crime charged. *See United States v. Myers,* 550 F.2d 1036 (5th Cir.1977). Even if the majority could circumscribe the rules of evidence to analyze such statement, an intent to flee is not enough.[3] *See Fast Horse, supra* (actually fled to California), *Waller, supra* (actually fled to Minnesota); *Hoover, supra* (actually fled to Missouri). Likewise, a plain reading of the instruction itself implies that the defendant had, in fact, left the

---

2. The record reflects that even the trial court acknowledged the facts of this case are not of the traditional sort of "flight" that would warrant the giving of this flight instruction:

. . . .

THE COURT: [M]ost often the nature of the flight instruction is used in a little different circumstance than this; i.e., the guy gets out of his car when the highway patrolman stops and takes off across the field, that sort of thing.

The facts and circumstances here indicate this was a slower process, that from the time of the event defendant continued his employment, and as things slowly evolved both parties' positions changed ... his employment

and those sorts of things. From and after the time of the arrest, I think is where one needs to also measure, plus his actions as you allege from the time of the event, that he was here and continued his employment, those sorts of things, and the jury needs to weigh it.

3. There is nothing in the record that could describe Fender's conduct as constituting flight. Likewise, the statement that he may in the future move outside the jurisdiction does not rise to the level of flight. Rightfully so, the jury was not instructed that the possibility of Fender leaving the jurisdiction amounted to flight. However, the flight instruction actually given was improperly before the jury for its consideration.

jurisdiction. The language of the instruction relies on the "flight" of the defendant to have already transpired. As such, a flight instruction was unwarranted.

[¶ 28.] It is important to note that a flight instruction, most generally, will be incidental to the main charging instructions of the offense. Therefore, it will, except in the rarest of cases, never be considered harmless or non-prejudicial. However, "it is widely acknowledged that evidence of flight or related conduct is 'only marginally probative as to the ultimate issue of guilt or innocence.'" *Myers,* 550 F.2d at 1049. How long are we going to continue to advise trial courts to give a flight instruction in limited circumstances, and then turn our head and affirm? Now is the time to step to the plate.

[¶ 29.] I respectfully dissent.