(266 P.3d 1242)
No. 105,560

STATE OF KANSAS, *Appellee*, v. KTORRI C. DUNLAP, *Appellant*.

Opinion filed December 2, 2011.

*Rick Kittel*, of Kansas Appellate Defender Office, for appellant.

*Gerald R. Kuckelman*, county attorney, and *Derek Schmidt*, attorney general, for appellee.

Before ARNOLD-BURGER, P.J., MALONE, J., and DANIEL L. HEBERT, District Judge Retired, assigned.

MALONE, J.: Ktorri C. Dunlap was found guilty by a jury of aggravated robbery and felony obstruction of official duty, and at the end of his trial, the trial judge failed to ask the jury whether the verdict that was read in open court was the verdict of the jury. K.S.A. 22-3421 states that a trial judge shall follow this procedure. We must decide whether the trial judge's failure to comply with the statute constituted reversible error. Under the facts of this case, we reject Dunlap's claim that he is entitled to a new trial because of this error on two alternative grounds. First, the trial judge explicitly asked the parties if they wanted to have the jury polled, which would have accomplished the same purposes as having the judge inquire into the accuracy of the verdict, and Dunlap's counsel declined the request for polling. In such cases, appellate courts should not consider a challenge to the procedure for accepting the verdict for the first time on appeal based on concepts of waiver or invited error. Second, any error by the trial court in failing to comply with K.S.A. 22-3421 is subject to harmless error analysis. Because we are persuaded that the error did not affect Dunlap's substantial rights, we conclude the trial court's failure to comply with K.S.A. 22-3421 constituted harmless error.

On May 29, 2010, at approximately 7 a.m., Damon Reynolds was working as a clerk at the Surf & Go convenience store in Atchison. Reynolds was sweeping the parking lot when a white Ford pickup truck pulled into the lot and parked on the south side of the building. A man exited the truck and entered the convenience store, so Reynolds followed the man into the store to serve him. Although Reynolds did not know the man's name, he had seen him numerous times before and recognized him because of a tattoo on his left cheek. Inside the store, the man asked Reynolds for a pack of Newport cigarettes. Reynolds walked behind the counter to get the cigarettes, and he noticed that the man was following him. When Reynolds turned around he saw a gun in the man's hand. The man told Reynolds that he was not going to hurt him, but he wanted money. The man took cash from the register and a carton of cig-

arettes. He left the store and got back into the pickup truck which drove away from the parking lot. Surveillance cameras captured images of these events.

Reynolds immediately reported the robbery to the police and gave a description of the man and the white Ford pickup truck. Officer Joshua Sinclair spotted the truck matching the description provided by Reynolds. Sinclair recognized the driver of the truck as Sheila Vanwey. As the vehicle slowed down, a man jumped out of the passenger side of the truck and ran into the backyard of a house. Sinclair shouted at the man to stop and began to chase him on foot. During the chase, Sinclair recognized the man from previous encounters as Dunlap. Reynolds eventually caught up with Dunlap and ordered him to the ground. Backup units then arrived and secured Dunlap. Officers searched the area and located a vest Dunlap had been wearing as well as an open carton and several unopened packages of cigarettes. Eventually, officers located a BB gun resembling a handgun in the area where Dunlap had been arrested.

Following his arrest, Dunlap waived his *Miranda* rights and agreed to speak with Officer Travis Eichelberger. Dunlap initially told Eichelberger that he could not remember much that had happened. Eichelberger then showed Dunlap surveillance video of the robbery and, after several viewings, Dunlap said, "I can't watch this anymore, it's me." The State charged Dunlap with one count of aggravated robbery and one count of obstruction of legal process or official duty. Prior to trial, Dunlap's counsel filed a motion to determine competency. The district court entered an order for a mental examination, and Dunlap was found competent to stand trial. After a preliminary hearing wherein Reynolds and Sinclair testified for the State, Dunlap was bound over for trial.

A jury trial commenced on September 28, 2010. Reynolds identified Dunlap as the man who robbed him at the convenience store. Sinclair identified Dunlap as the man he chased on foot and arrested a short time after the robbery. Eichelberger testified about Dunlap's incriminating statements during the interview. Vanwey also testified for the State. She stated that on the morning of May 29, 2010, she gave Dunlap a ride in her truck to the Surf & Go

convenience store, and she waited in the truck while he went into the store. Vanwey testified that when Dunlap returned he was carrying cigarettes and money. Vanwey admitted she was afraid that Dunlap had robbed the store. The State introduced evidence of the carton of cigarettes and the BB gun found in the area where Dunlap was arrested. The State also introduced into evidence numerous surveillance photographs clearly depicting Dunlap robbing Reynolds with a handgun.

Dunlap did not testify at trial and he called no witnesses. After deliberating 21 minutes, the jury returned guilty verdicts on charges of aggravated robbery and obstructing official duty. The trial judge read the verdicts in open court:

"THE COURT: All right.

"The Court will note the jury is all present, as are counsel and the defendant.

"The jury has reached its verdict.

"The Court will read the verdict.

"No. 1.

"We, the jury, find the defendant guilty of the crime of aggravated robbery.

"Signed by the Presiding Juror.

"No. 2.

"We, the jury, find the defendant guilty of the crime of obstructing official duty.

"Signed by the Presiding Juror.

"Are there any requests of the Court to poll the jury, first by the State?

"MR. KUCKELMAN: No, Judge.

"THE COURT: Mr. Campbell?

"MR. CAMPBELL: No, Judge.

"THE COURT: All right.

"Ladies and gentlemen of the jury, this completes your jury service for today and, hopefully, for the rest of your term."

The verdict forms reflecting the guilty verdicts were filed with the court, and the judge ordered a presentence investigation (PSI) report. Dunlap later filed a motion for acquittal notwithstanding the verdict and/or motion for new trial challenging the sufficiency of the evidence and the fact that "no persons of color were on the jury." Dunlap also filed a motion for durational departure. On November 1, 2010, the trial court denied the posttrial motions. Dunlap's PSI report disclosed 15 prior convictions including a prior conviction of aggravated robbery. Based upon Dunlap's criminal

history, the trial court imposed the standard presumptive sentence of 216 months' imprisonment. Dunlap timely appealed his convictions.

Dunlap's brief states one issue: "The district court erred when it accepted the jury's verdict without inquiring into the accuracy of the verdict." Dunlap argues that K.S.A. 22-3421, which sets forth the procedure for accepting a jury verdict in a criminal case, requires that an inquiry be made as to whether the verdict read in open court is the jury's verdict and that the district court's failure to do so constituted reversible error. Dunlap has waived and abandoned any other claim of error that he raised in district court. See *State v. McCaslin*, 291 Kan. 697, 709, 245 P.3d 1030 (2011).

Resolution of this issue requires this court to interpret K.S.A. 22-3421. Interpretation of a statute is a question of law over which appellate courts have unlimited review. *State v. Arnett*, 290 Kan. 41, 47, 223 P.3d 780 (2010). Furthermore, appellate courts exercise de novo review over issues of jury unanimity. *State v. Dayhuff*, 37 Kan. App. 2d 779, 784, 158 P.3d 330 (2007).

K.S.A. 22-3421 sets forth the procedure for the district court to accept a jury verdict in a criminal case and provides:

"The verdict shall be written, signed by the presiding juror and read by the clerk to the jury, and *the inquiry made whether it is the jury's verdict*. If any juror disagrees, the jury must be sent out again; but if no disagreement is expressed, and neither party requires the jury to be polled, the verdict is complete and the jury discharged from the case. If the verdict is defective in form only, it may be corrected by the court, with the assent of the jury, before it is discharged." (Emphasis added.)

We interpret K.S.A. 22-3421 as requiring the trial court to follow two separate steps in accepting a jury verdict. First, the trial judge shall inquire whether the verdict read in open court is the jury's verdict. Second, the trial judge must poll the jury if either party requests that the jury be polled. At Dunlap's trial, the judge complied with the second step of K.S.A. 22-3421 by asking both counsel if they desired to have the jury polled. However, the judge failed to satisfy the first step by inquiring whether the verdict read in open court was the jury's verdict.

Whether the trial judge's failure to inquire into the accuracy of the verdict constitutes reversible error was addressed by this court in *State v. Johnson*, 40 Kan. App. 2d 1059, 198 P.3d 769 (2008). In *Johnson*, the defendant was charged with felony driving under the influence of alcohol. At trial, the defendant asserted that he was fully capable of driving on the evening in question, contrary to the arresting officer's testimony. Two additional witnesses who had been with the defendant earlier in the evening testified that they did not believe the defendant was too intoxicated to drive that night. The jury asked several questions during deliberations, including what would happen if the jury could not reach a unanimous verdict. The trial court ordered the jury to continue deliberations, and the jury later returned a guilty verdict. In accepting the verdict, the judge did not inquire whether the verdict read in open court was the jury's verdict. Also, the judge did not ask the parties if they wanted to have the jury polled, and neither party made such a request. In support of a motion for new trial, the defendant submitted affidavits from two jurors who indicated that they did not feel the verdict was unanimous. Both jurors stated that they felt "rushed at the end" to agree with a guilty verdict. 40 Kan. App. 2d at 1080-81. The trial court denied the motion for new trial.

On appeal, the defendant argued the trial court erred in failing to inquire into the accuracy of the jury's verdict and in failing to ask whether the parties wanted to have the jury polled. As to polling the jury, the *Johnson* court determined that the trial court is not required to ask whether the parties would like the jury polled; rather, the parties carry the burden to request a poll. 40 Kan. App. 2d at 1075. Therefore, the *Johnson* court held that the defendant waived his right to have the jurors individually polled by failing to request the poll. 40 Kan. App. 2d at 1075.

Next, the court turned to the defendant's argument that the trial court erred when it failed to inquire into the accuracy of the jury's verdict. The *Johnson* court noted that until the verdict is properly received and recorded, a juror is at liberty to withdraw his or her consent to the verdict and express disagreement with the verdict in open court. 40 Kan. App. 2d at 1076-77. Thus, the court determined that until the trial court properly inquires and learns that

the verdict is truly unanimous, the verdict is incomplete. 40 Kan. App. 2d at 1077. The court went on to analyze whether the trial court's failure to make the required inquiry constituted reversible error. The court noted there was evidence in the record which called into question the unanimity of the jury's verdict—including questions by the jury during deliberations asking what would happen if the jury could not reach a unanimous verdict and two post-trial affidavits from jurors indicating that they did not feel the verdict was truly unanimous. Based on the record, the *Johnson* court concluded that the trial court's failure to inquire into the accuracy of the verdict as required under K.S.A. 22-3421 constituted reversible error "in this case." 40 Kan. App. 2d at 1081.

This court revisited the same issue in *State v. Gray*, 45 Kan. App. 2d 522, 249 P.3d 465, *rev. denied* 292 Kan. 967 (2011). In *Gray*, the jury foreman read the verdicts aloud in open court, finding the defendant guilty of one count of aggravated assault of a law enforcement officer and three alternative counts of fleeing and attempting to elude a police officer. The trial judge asked the parties if they wished to have the jury polled, and both parties declined. However, the judge did not ask the jury whether the verdict read in court was the jury's verdict. On appeal, the defendant contended that the trial court erred in failing to make the appropriate inquiry of the jury as required under K.S.A. 22-3421. The State did not dispute that the district court failed to make the inquiry; rather, the State attempted to distinguish the case from *Johnson* in that there was nothing in the record to raise concerns about the unanimity of the verdict.

The *Gray* court recognized the distinction but stated that K.S.A. 22-3421 requires the inquiry even when the parties waive polling in order to "ensure a defendant's *constitutional* right to a unanimous verdict and to safeguard the concept of finality with respect to the jury verdict." (Emphasis added.) 45 Kan. App. 2d at 524. The *Gray* court went a step further than the *Johnson* court and found that, even when there were no concerns about the unanimity of the jury's verdict, the trial court's failure to make the required inquiry was reversible error. 45 Kan. App. 2d at 524-25. In other words, the *Gray* court held that failure to strictly comply with the

requirements of K.S.A. 22-3421 constituted structural error requiring reversal and there was no need to analyze whether the defendant suffered prejudice by the error.

Since the *Gray* opinion was published in March 2011, numerous direct appeals from jury trials have been filed in this court requesting the reversal of convictions based on the trial court's failure to inquire into the accuracy of the verdict. On the November 2011 docket alone, this court has three cases raising this issue. It is already apparent to this court that the error committed by the trial court in *Gray* was not an isolated incident, and that perhaps many trial judges in Kansas do not strictly comply with the provisions of K.S.A. 22-3421 in accepting a jury verdict. The structural error approach adopted by this court in *Gray* has far-reaching implications, not only in pending direct appeals but also in prior cases where the defendant may be entitled to postconviction relief. The State urges this court to reject the structural error approach adopted in *Gray* when a trial court fails to inquire into the accuracy of a jury verdict. We note that the Kansas Supreme Court has previously held that one panel of the Court of Appeals is not bound by another panel's decision. *State v. Urban*, 291 Kan. 214, 223, 239 P.3d 837 (2010).

The State correctly notes that Dunlap is raising this issue for the first time on appeal. Dunlap did not object when the district court released the jury without inquiring into the accuracy of its verdict. Furthermore, Dunlap did not raise the issue in his motion for new trial. Nonetheless, there are several exceptions to the general rule that a new legal theory may not be asserted for the first time on appeal, including the following: (1) the newly asserted theory involves only a question of law arising on proved or admitted facts and is finally determinative of the case; (2) consideration of the theory is necessary to serve the ends of justice or to prevent denial of fundamental rights; and (3) the judgment of the district court may be upheld on appeal despite its reliance on the wrong ground or assignment of a wrong reason for its decision. *State v. Dukes*, 290 Kan. 485, 488, 231 P.3d 558 (2010). Dunlap argues that this court should consider the issue on appeal because it raises solely a

question of law and does not rely on disputed facts and because it involves the fundamental right to a unanimous jury verdict.

In *State v. Holt*, 285 Kan. 760, 175 P.3d 239 (2008), the Kansas Supreme Court addressed whether a trial court's failure to strictly comply with the requirements of K.S.A. 22-3421 should be considered as an issue for the first time on appeal. In *Holt*, the defendant was charged with first-degree premeditated murder and conspiracy to commit murder. At one point during deliberations, the jury notified the trial court that it was unable to reach a verdict on one of the counts. Nevertheless, the jury continued to deliberate and after the trial judge answered additional questions, the jury returned a verdict of guilty on both counts. The trial judge asked the presiding juror whether the verdict read in court was the verdict of the jury, and the presiding juror said yes. At the request of defense counsel, the trial judge polled the jury. In doing so, the judge asked each juror, " 'Is this the verdict of the jury?' " rather than asking each juror, " 'Is this your verdict?' " 285 Kan. at 766. The defendant did not object at trial to the polling procedure.

On appeal, the defendant claimed the trial court erred by failing to properly poll the jury according to K.S.A. 22-3421. In deciding whether to address the issue for the first time on appeal, the Supreme Court noted that the right to a unanimous jury verdict in Kansas is statutory but not constitutional. 285 Kan. at 766. The court recognized the importance of giving the trial court the opportunity to correct any alleged trial error and determined that the defendant's failure to object to the polling procedure at trial barred the defendant from raising the issue on appeal. 285 Kan. at 768-69. The court also stated that under the facts of the case, consideration of the polling issue for the first time on appeal was not warranted under the "ends of justice" exception because the defendant failed to show that the purported error actually harmed him. 285 Kan. at 770. The court concluded its discussion by stating that while trial courts do not have to be "letter perfect" in their polling procedures and language, the better practice is to poll the jury in such a way as to ensure that each juror is answering for himself or herself, *e.g.*, by asking each juror, " 'Is this your verdict?' " 285 Kan. at 770-71.

Although the precise issue in *Holt* was not the same as the issue before this court, the Supreme Court's language in that opinion provides this court with some authority to reject Dunlap's claim simply because he is raising the issue for the first time on appeal. Dunlap did not object when the trial court failed to inquire about the jury's verdicts. Had Dunlap objected to the procedure, the trial court certainly could have corrected its error. More importantly, Dunlap's counsel specifically denied the judge's request to poll the jury. An identical situation was addressed by the South Dakota Supreme Court in *State v. Hoover*, 89 S.D. 608, 620, 236 N.W.2d 635 (1975). South Dakota has a statute similar to K.S.A. 22-3421 which requires that a verdict must be read to the jury and inquiry made whether it is the jury's verdict. See S.D. Codified Laws Ann. § 23-45-26. In *Hoover*, the judge made no inquiry as to the accuracy of the jury's verdict, but the judge specifically asked the parties if they wanted to have the jury polled and both counsel said no. The *Hoover* court stated that the trial court's failure to inquire into the verdict is generally reversible error. But the court held the defendant waives the statutory right when he or she chooses not to poll the jurors, and in such instance the defendant will not be allowed to raise the issue for the first time on appeal:

"We do not deny Appellant's proposition that the requirement that the jury affirm the verdict is long established and failure to comply with the requirement is reversible error. This is a safeguard built into our trial procedure for obvious reasons. It affords the jurors an opportunity to express their dissent from a written verdict in which they do not concur when it is delivered and read in open court. However, in the factual setting of this trial the Court offered both sides full opportunity to poll the jury in order to ascertain with greater certainty the accuracy of the verdict and both sides declined to do so. Having thus affirmatively waived his statutory right Defendant will not now be heard to make this objection on appeal." 89 S.D. at 619.

We must decide whether Dunlap should be allowed to challenge the procedure for accepting the verdicts when he declined the trial court's request to have the jury polled. In *Gray*, this court found that K.S.A. 22-3421 requires the trial court to inquire whether the jury agrees with the verdict even when the parties waive polling in order to ensure a defendant's constitutional right to a unanimous

verdict and to safeguard the concept of finality with respect to the jury verdict. 45 Kan. App. 2d at 524. Although the court in *Gray* mistakenly referred to the right to a unanimous verdict as a constitutional right rather than a statutory right, no one can dispute the notion that the right to a unanimous verdict is a fundamental right in Kansas that must be protected by the courts. But the *Gray* court overlooked the very important point that polling the jury accomplishes the same purposes as having the trial judge inquire into the accuracy of the verdict, *i.e.*, ensuring jury unanimity and finality of the verdict. Here, the trial court specifically asked the parties if they wanted to have the jury polled and Dunlap's counsel said no. We believe this fact has important implications as to whether this court should consider Dunlap's challenge to the procedure for accepting the verdict for the first time on appeal.

Under K.S.A. 22-3421, the trial court is only required to poll the jury if either party requests that the jury be polled. The parties carry the burden of making this request. *Johnson*, 40 Kan. App. 2d at 1075. But unlike the trial judge in *Johnson*, the judge at Dunlap's trial explicitly asked the parties if they wanted to have the jury polled. The parties were present in the courtroom and had the opportunity to observe the demeanor of the jurors while the verdicts were read in open court. As soon as the verdicts were read, the judge asked the parties if they wanted to have the jury polled and defense counsel replied, "No, judge." Had Dunlap accepted the trial judge's invitation to have the jury polled, any problems with the accuracy of the verdict would have been discovered before the jury was discharged from the case.

We hold that when the trial judge in a criminal case explicitly asks the parties if they want to have the jury polled, which would accomplish the same purposes as having the trial judge inquire into the accuracy of the verdict, and the defendant declines the request for polling, the appellate court should not consider a challenge to the procedure for accepting the verdict for the first time on appeal based on concepts of waiver or invited error. Here, the trial judge explicitly asked the parties if they wanted to have the jury polled and Dunlap's counsel said no. Polling the jury would have achieved the purpose of ensuring Dunlap's statutory right to a unanimous

verdict. Likewise, polling the jury would have safeguarded the concept of finality with respect to the jury verdict. By polling the jury, each juror would have been given the opportunity to express disagreement with or dissent from the verdict in open court. Because Dunlap declined the trial court's explicit request to have the jury polled, which would have accomplished the same purposes as having the trial judge inquire into the accuracy of the verdict, we conclude he is not allowed to challenge the procedure for accepting the verdict for the first time on appeal.

Although we could end our analysis here, we will also address the State's alternative argument that even if the trial court erred by failing to inquire into the accuracy of the verdict, such error was harmless in Dunlap's case. Generally, errors at any stage of trial proceedings are subject to harmless error analysis under K.S.A. 2010 Supp. 60-261, which provides:

"Unless justice requires otherwise, no error in admitting or excluding evidence, *or any other error by the court* or a party, is ground for granting a new trial, for setting aside a verdict or for vacating, modifying or otherwise disturbing a judgment or order. At every stage of the proceeding, the court must disregard all errors and defects that do not affect any party's substantial rights." (Emphasis added.)

Our Supreme Court has set forth the following test for determining whether an error is harmless:

"[B]efore a Kansas court can declare an error harmless it must determine that the error did not affect a party's substantial rights, meaning it will not or did not affect the trial's outcome. The degree of certainty by which the court must be persuaded that the error did not affect the outcome of the trial will vary depending on whether the error implicates a right guaranteed by the United States Constitution. If it does, a Kansas court must be persuaded beyond a reasonable doubt that there was no impact on the trial's outcome, *i.e.*, there is no reasonable possibility that the error contributed to the verdict. If a right guaranteed by the United States Constitution is not implicated, a Kansas court must be persuaded that there is no reasonable probability that the error will or did affect the outcome of the trial." *State v. Ward*, 292 Kan. 541, 565, 256 P.3d 801 (2011).

Not all errors are subject to this harmless error analysis. Structural error occurs in very limited circumstances where the error " 'affect[s] the framework within which the trial proceeds' " and thus defies analysis by harmless error standards. *Boldridge v. State*,

289 Kan. 618, 627, 215 P.3d 585 (2009) (quoting *Arizona v. Fulminante*, 499 U.S. 279, 309-10, 111 S. Ct. 1246, 113 L. Ed. 2d 302 [1991]). Errors which have been found to be structural include the complete denial of the right to counsel, the denial of the right to public trial, and the denial of the right to trial by jury. *Boldridge*, 289 Kan. at 627-28. But other errors of constitutional magnitude are simply errors in the trial process itself and are thus subject to harmless error analysis. *Fulminante*, 499 U.S. at 310.

The failure of the trial court to inquire into the verdict does not affect the framework of the entire trial and does not appear consistent with structural error. In Kansas, the right to a unanimous jury verdict in criminal cases is statutory rather than constitutional, as incorrectly stated by the court in *Gray*. 45 Kan. App. 2d at 524; see *Holt*, 285 Kan. at 766 (right to a unanimous jury verdict is not constitutional but statutory). This fact alone suggests that a trial court's failure to comply with the requirements of K.S.A. 22-3421 does not constitute structural error. Moreover, the Kansas Supreme Court has held that in some instances a trial court's failure to comply with statutes that are mandatory in nature is subject to harmless error analysis. See, *e.g.*, *State v. Bell*, 266 Kan. 896, 919-20, 975 P.2d 239 (1999) (trial court's failure to comply with mandatory provision of K.S.A. 22-3420[3] by answering jury questions in open court is subject to harmless error); *State v. Borders*, 255 Kan. 871, 881, 879 P.2d 620 (1994) (failure to comply with a mandatory statute such as K.S.A. 22-3424 is error, but not reversible error unless prejudice to the substantial rights of the defendant is shown).

At least two other factors support the conclusion that the trial court's failure to inquire into the verdict does not constitute structural error. First, our Supreme Court stated in *Holt* that "letter perfect" compliance with jury polling procedures under K.S.A. 22-3421 is not required. 285 Kan. at 770. The *Holt* court's failure to consider the polling issue for the first time on appeal because the defendant failed to show that the purported error actually harmed him is contrary to the notion that failure to comply with K.S.A. 22-3421 is always structural error. Second, juries are normally instructed that their verdicts must be unanimous, as was the case

here, and juries are presumed to have followed instructions. *State v. Becker*, 290 Kan. 842, 856, 235 P.3d 424 (2010). This court would be required to ignore this presumption in order to find reversible error in Dunlap's case absent any indication that the jury's verdict was not unanimous.

For these reasons, we agree with the State that any error by the trial court in failing to comply with K.S.A. 22-3421 is subject to harmless error analysis. Before a Kansas court can declare an error harmless it must determine that the error did not affect a party's substantial rights, meaning it did not affect the trial's outcome. K.S.A. 2010 Supp. 60-261; *Ward*, 292 Kan. at 565. If the error implicates only a statutory right, as in this case, then before a Kansas court can declare the error harmless, the court must be persuaded that there is no reasonable probability that the error affected the outcome of the trial. 292 Kan. at 565. In applying harmless error analysis to a violation of K.S.A. 22-3421, the appellate court should consider the sufficiency of the evidence supporting the verdict. More importantly, the appellate court should consider whether there is anything in the record to raise doubt that the verdict was unanimous.

Applying harmless error analysis to Dunlap's case, we first note that the guilty verdicts were supported by overwhelming evidence. Reynolds positively identified Dunlap as the man who committed the robbery, and this testimony was confirmed by Vanwey, who was driving the getaway vehicle. Sinclair apprehended Dunlap a short time after the robbery was committed, and evidence from the robbery was found in Dunlap's possession. Also, surveillance cameras captured images of the robbery. Dunlap admitted to Eichelberger that he was the person depicted in the surveillance photographs. More importantly, unlike the situation in *Johnson*, there is nothing in the record on appeal to raise any doubt that the jury verdict at Dunlap's trial was unanimous. The jury deliberated for 21 minutes before reaching the verdicts, no questions were submitted by the jury during deliberations, and Dunlap has come forward with no juror affidavits expressing doubts about the integrity of the verdicts.

Based on the record on appeal, we are persuaded that there is no reasonable probability that the trial court's failure to inquire into the accuracy of the jury verdict affected the outcome of Dunlap's trial. Accordingly, even if the issue is properly preserved for appeal, we conclude that the trial court's failure to comply with the requirements of K.S.A. 22-3421 amounted to harmless error in this case.

Affirmed.