(198 P.3d 769)
No. 99,102

STATE OF KANSAS, *Appellee,* v. RANDY JOHNSON, *Appellant.*

Opinion filed December 31, 2008.

*Randall L. Hodgkinson,* of Kansas Appellate Defender Office, for appellant.

*Justin A. Barrett,* county attorney, and *Stephen N. Six,* attorney general, for appellee.

Before MCANANY, P.J., GREEN and BUSER, JJ.

GREEN, J.: Randy Johnson appeals from his jury trial conviction of felony driving under the influence of alcohol (DUI) in violation of K.S.A. 8-1567. First, Johnson argues that his case should be remanded for a new trial because a juror improperly introduced extrajudicial evidence regarding prior bad acts. Nevertheless, because Johnson has failed to show that the alleged juror misconduct substantially prejudiced his right to a fair trial, he has not established that the trial court abused its discretion in denying him a new trial. As a result, Johnson's argument fails.

Next, Johnson contends that the trial court failed to completely respond to the jury's question about the consequences of a hung jury. Nevertheless, we determine that there was nothing in the trial court's response that would prejudice Johnson's rights in this case. As a result, we find no abuse of discretion in the trial court's response to the jury's question.

Finally, Johnson argues that the trial court erred in failing to inquire into the accuracy of the jury's verdict and in failing to ask whether the parties wanted the jury polled. Under K.S.A. 22-3421,

the parties have the burden to request individual polling of the jury. Because Johnson failed to timely request polling of the jury, he waived his right to have the jury individually polled. Nevertheless, K.S.A. 22-3421 imposes a statutory mandate upon the trial court to ask the jury in open court whether the verdict is the jury's verdict. Because the trial court failed to follow the statutory mandate of K.S.A. 22-3421, which would give the jurors an opportunity to express dissent from or disagreement with the verdict, we cannot be satisfied that the verdict was truly unanimous in this case. Under the facts of this case, where Johnson has presented jurors' affidavits showing problems with the unanimity of the verdict, we determine that the trial court's failure to follow the statutory mandate of K.S.A. 22-3421 to inquire as to whether the verdict was the jury's verdict amounted to reversible error.

Officer Mark Davidson stopped Johnson around 3 a.m. on June 12, 2005. Before stopping Johnson, Davidson's radar had clocked Johnson's van traveling 42 miles per hour in a 65-mile-per-hour speed zone. Davidson testified that he had passed Johnson going in the opposite direction, so he turned around and began following him. While following Johnson, Davidson saw Johnson's van travel left of the center line and also cross the right white line. According to Davidson, Johnson was unable to produce his driver's license during the stop. Nevertheless, Craig Van Allen, the officer who later came to assist Davidson with the stop, testified that he saw Davidson with Johnson's driver's license that evening.

Davidson testified that when he asked Johnson to step out of the van, Johnson appeared to be under the influence of alcohol. Davidson testified that Johnson had bloodshot eyes, slurred speech, and poor coordination. In addition, Johnson smelled of alcohol. Davidson had Johnson perform field sobriety tests. According to Davidson, Johnson said that he knew he would fail the tests. Davidson testified that during the walk-and-turn field sobriety test, Johnson lost his balance in the instruction stage; did not touch heel to toe; stepped off the line; and made an improper turn. Moreover, on the one-leg stand test, Johnson hopped and put his foot down on the ground.

After Johnson performed the field sobriety tests, Van Allen arrived to assist Davidson. Van Allen testified that Johnson's speech was slurred, his balance and coordination were impaired, and his breath smelled of alcohol. According to Van Allen, Johnson had trouble standing in one spot and was taking steps to maintain a standing position. Moreover, Van Allen testified that Johnson admitted that he had been drinking but asked the officers not to arrest him.

Davidson arrested Johnson for DUI. Davidson testified that his opinion was that Johnson could not safely operate an automobile. After Johnson agreed to submit to an alcohol blood test, Davidson took him to the hospital. On the way to the hospital, Van Allen dropped Johnson's van off at Johnson's body shop. Van Allen testified that there was a box of beer in Johnson's van between the passenger's seat and driver's seat "but pushed a little back."

Upon arriving at the hospital, Johnson said that he had changed his mind and would not take the blood test. Davidson then took Johnson to the police station. Both Van Allen and Davidson testified that Johnson stumbled on his way into the police station. Moreover, Van Allen testified that Johnson leaned against the wall as he walked down the hallway. Davidson and Van Allen later took Johnson home.

Johnson was charged with felony DUI in violation of K.S.A. 8-1567(a). During his testimony at the jury trial, Johnson admitted that he had approximately five beers between 10:30 p.m. on June 11, 2005 and before 2 a.m. on June 12, 2005. Nevertheless, Johnson testified that he thought he was fully capable of driving in a safe manner. According to Johnson, he had his first beer when he met his two friends, Brian Draper and Eric Harper, at a bar in Atwood between 10:30 and 11 p.m. After having one beer, Johnson drove Draper and Harper to Colby to celebrate Draper's birthday. Johnson testified that they arrived at a bar in Colby just after midnight where they ran into three other friends. According to Johnson, he had one bottle of beer and two to three beers out of a pitcher while he was at the bar in Colby. Upon leaving the bar around 2 a.m., Johnson drove Draper and Harper to Harper's car in Atwood.

Harper testified that he and Draper had put the box of beer in Johnson's van. According to Harper, he and Draper, not Johnson, were drinking the beer in Johnson's van on the way to and from Colby. Harper testified that he did not believe that Johnson was too intoxicated to drive that night. Jason Barnhardt, one of Johnson's friends at the Colby bar, testified that he had no doubts about Johnson's ability to drive safely that evening. According to Barnhardt, their group of six had only had two or three pitchers within an hour and a half at the bar in Colby.

Johnson testified that after he dropped Draper and Harper off at Harper's car, he drove towards his home in St. Francis. Johnson stopped at a rest area in MacDonald to use the restroom but then continued driving home. Johnson testified that he had his cruise control set at 67 miles per hour in the 65-mile-per-hour speed zone. Johnson further testified that when he reached Bird City, he slowed down and coasted through the town but then resumed his cruise control at 67 miles per hour. Johnson testified that he never passed a car going in the opposite direction but he did notice a car behind him a few miles outside of Bird City. Johnson was stopped several miles later by Davidson.

According to Johnson, Davidson said that the reason he stopped Johnson was because Johnson was traveling 53 miles per hour through Bird City. Johnson testified that Davidson never said that he had observed Johnson traveling across the center line or driving 42 miles per hour in a 65 mile-per-hour-speed zone. Johnson further testified that when Davidson asked him to perform the field sobriety tests, he agreed to perform the tests but told Davidson that he would not be able to complete them due to the wind that evening. Johnson admitted that he refused to take the blood alcohol test. Johnson testified, however, that Davidson never told him about the consequences of his refusal. Further, Johnson denied that he stumbled when he walked into the police station.

Johnson testified that Davidson gave him the implied consent advisory form and told him to look at it but did not read the advisories to him. On the other hand, Davidson testified that he had read the implied consent advisories to Johnson. Davidson indicated that he read Johnson the implied consent advisories at the scene

of the stop but was unsure whether he gave Johnson the implied consent advisory form there or at the hospital.

During jury deliberations, the jury asked several questions, including what would happen if it could not reach a unanimous verdict. The jury was sent back to deliberation, and it later returned a verdict of guilty on the DUI charge.

## I. Did a juror improperly introduce extrajudicial evidence regarding prior bad acts?

First, Johnson argues that his case should be remanded for a new trial because a juror improperly introduced extrajudicial evidence regarding prior bad acts. Under K.S.A. 22-3501, "[t]he court on motion of a defendant may grant a new trial to him if required in the interest of justice." An appellate court reviews the trial court's decision on a motion for a new trial for an abuse of discretion. See *State v. Mathis*, 281 Kan. 99, 103-04, 130 P.3d 14 (2006). " 'A trial court abuses its discretion when it denies a motion for a new trial based on juror misconduct if the defendant can show that (1) an act of the jury constituted misconduct and (2) the misconduct substantially prejudiced the defendant's right to a fair trial. [Citation omitted.]' [Citation omitted.]" *Mathis*, 281 Kan. at 103-04.

After the jury rendered its guilty verdict in this case, Johnson moved for a new trial based in part on juror misconduct. Attached to Johnson's motion for a new trial were affidavits from jurors. In one of the affidavits, a juror claimed that one of the other jurors had stated during deliberations that "this was not Randy's 1st time and he was about due for the charge."

The State suggests that the juror's statement was a mental process, which cannot be used to show juror misconduct under K.S.A. 60-441. On the other hand, Johnson contends that the juror's statement was not an example of a mental process but was a statement showing that a juror had introduced prejudicial extrajudicial evidence in the deliberation process.

The procedure for and limitations on challenging the validity of a jury's verdict are statutory. Under K.S.A. 60-444(a), a juror is not exempt "from testifying as a witness to conditions or occurrences

either within or outside of the jury room having a material bearing on the validity of the verdict . . . except as expressly limited by K.S.A. 60-441." K.S.A. 60-441 prohibits testimony concerning the jury's mental processes:

"Upon an inquiry as to the validity of a verdict or an indictment no evidence shall be received to show the effect of any statement, conduct, event or condition upon the mind of a juror as influencing him or her to assent to or dissent from the verdict or indictment or concerning the mental processes by which it was determined."

A verdict may not be impeached by questions concerning a juror's views or conclusions, the reasons for those views or the factors used in determining those conclusions, or what influences those views or the mental process in reaching such conclusions. *Saucedo v. Winger*, 252 Kan. 718, 728-29, 850 P.2d 908 (1993).

In *State v. Cook*, 281 Kan. 961, 135 P.3d 1147 (2006), our Supreme Court clarified what evidence can be considered under K.S.A. 60-444(a) and what evidence is excluded under K.S.A. 60-441. There, the defendant moved to recall the jury based on a juror affidavit where the affiant attested that he heard another juror state that the defendant had previously been tried and convicted of the same crime. Our Supreme Court held that the evidence of what the other juror had said to the affiant juror was admissible under K.S.A. 60-444(a). Any evidence of what effect the statement had on the affiant's mental process in reaching the verdict was inadmissible under K.S.A. 60-441. 281 Kan. at 977-78.

In reaching this determination, our Supreme Court in *Cook* looked to its previous decision in *State v. Kaiser*, 260 Kan. 235, 918 P.2d 629 (1996). In *Kaiser*, the defendant moved to recall the jury based on a juror affidavit where the affiant stated that, contrary to her expressed opinion that the defendant was not guilty, she had been pressured by other jurors to agree to a guilty verdict. Our Supreme Court held that the evidence of what the other jurors said and did was admissible under K.S.A. 60-444(a). The evidence of what effect the conduct had on the affiant's mental process in reaching the guilty verdict was inadmissible under K.S.A. 60-441. 260 Kan. at 250-52.

An application of *Cook* and *Kaiser* to the facts of this case leads to the conclusion that evidence of what the other juror had said can be considered under K.S.A. 60-444(a). Nevertheless, any evidence about what effect the other juror's statement had on the affiant juror's mental processes in reaching the verdict is barred by K.S.A. 60-441.

We draw guidance from *Brown v. Hardin*, 197 Kan. 517, 419 P.2d 912 (1966). In *Brown*, our Supreme Court indicated that evidence of other jurors' statements that related to matters that were an intrinsic part of the verdict should not be considered under K.S.A. 60-441. Although *Brown* is a civil case, its reasoning is instructive. After the verdict in *Brown*, two jurors submitted affidavits relating that statements were made by other jurors in the jury room that they did not give any consideration to a rebuttal witness' testimony because they were of the opinion he had been "paid" to come and testify and that it was also remarked that the witness had been "bought off" and they could not pay any attention to his testimony. Rejecting the appellant's argument that this was juror misconduct, our Supreme Court stated:

"Clearly these affidavits related to matters occurring during the jury's deliberations which were an intrinsic part of the verdict, namely, expression of opinion on weight to be given testimony. There is no suggestion of extrinsic misconduct of any juror, no claim of personal knowledge on the part of any juror or no indication of outside influence as was true in cases relied on by plaintiff. Human nature, being what it is, if every wild expression of opinion made in a jury room in the throes of hammering out a verdict could be made the basis for retrial jury verdicts could seldom be preserved. Such inquiries into the validity of jury verdicts, based on mental processes of the jurors, are foreclosed in Kansas, formerly by case law, now by statute. [Citation omitted.]" 197 Kan. at 523.

As a result, our Supreme Court found no prejudicial error requiring reversal.

Under *Brown*, not all statements made by other jurors are admissible under K.S.A. 60-444(a). Particularly, those statements that involve an opinion of the other jurors are inadmissible because they are evidence of mental processes. The State contends that the statements in this case are similar to those in *Brown*. It seems that the State is correct. The statement of which Johnson complains

appears to be an opinion on the part of a juror as to Johnson's previous conduct. There is no indication in the affidavit that the offending juror discussed a specific situation involving Johnson or gave any specific facts of Johnson previously drinking and driving. The statement is similar to those statements in *Brown* as it involved the subjective thought of the juror.

Nevertheless, it is unnecessary to determine whether the juror's statement complained of here was inadmissible under K.S.A. 60-441 because the record establishes that Johnson has not shown that he was prejudiced by the juror's statement. In denying Johnson's motion for a new trial based on juror misconduct, the trial court determined that the evidence in the juror's affidavits did not rise to the level of what is required for a new trial. Essentially, the trial court jumped straight to the prejudice prong and determined that the conduct did not prejudice Johnson's right to a fair trial.

Johnson cites no case where a new trial was granted based on a juror's statements similar to the statement made in this case. Instead, Johnson attempts to compare the statement made in this case to the presentation of impermissible prior bad acts evidence under K.S.A. 60-455 to the jury during trial. Nevertheless, Johnson provides no authority for this flawed analogy.

Moreover, the admission of prior bad acts evidence under K.S.A. 60-455 and the statement that occurred during jury deliberations in this case are not capable of comparison. Prior bad acts evidence under K.S.A. 60-455 is presented to the jury during trial. The jury is then instructed to consider the K.S.A. 60-455 evidence for a certain purpose in reaching its verdict. See *State v. Gunby*, 282 Kan. 39, Syl. ¶ 3, 144 P.3d 647 (2006) (To avoid error in the admission of K.S.A. 60-455 evidence, the trial court must give a limiting instruction informing the jury of the specific purpose for admission.).

On the other hand, jurors' statements are not evidence presented in the case, and a jury is instructed to decide the case on the evidence presented at trial. In this case, the jury was specifically instructed about the evidence it could consider in its deliberations: "In your fact finding you should consider and weigh everything admitted into evidence. This includes testimony of witnesses, ad-

missions or stipulations of the parties, and any admitted exhibits. You must disregard any testimony or exhibit which I did not admit into evidence." Finally, the jury was instructed that its verdict "must be founded entirely upon the evidence admitted and the law as given in these instructions." "It is well established that juries are presumed to have followed the instructions given by the trial court." *State v. Rice*, 273 Kan. 870, 873, 46 P.3d 1155 (2002). As a result, Johnson's attempted analogy between prior bad acts evidence under K.S.A. 60-455 and the juror's statement in this case fails.

Here, the offending juror's statement that "this was not Randy's 1st time and he was about due for the charge" does not refer to extrinsic evidence of any particular facts. Although not specifically mentioned in Johnson's appellate brief, it should be pointed out that in another affidavit, one of the jurors stated that during deliberations, there were "[a] lot of comments about Randy, like 'We all know how Randy is.' And that if the police say he was drunk, then he was drunk." Nevertheless, there is no mention in the affidavits that any juror had specific knowledge of a prior DUI incident involving Johnson or that a specific prior DUI incident was discussed in the jury room. All that Johnson has established in this case is that there were general statements made that "this was not Randy's 1st time" and "[w]e all know how Randy is."

As Judge Learned Hand stated in *Jorgensen v. York Ice Machinery Corporation*, 160 F.2d 432, 435 (2d Cir.), *cert. denied* 332 U.S. 764 (1947):

"[I]t would be impracticable to impose the counsel of absolute perfection that no verdict shall stand, unless every juror has been entirely without bias, and has based his vote only upon evidence he has heard in court. It is doubtful whether more than one in a hundred verdicts would stand such a test; and although absolute justice may require as much, the impossibility of achieving it has induced judges to take a middle course, for they have recognized that the institution could not otherwise survive; they would become Penelopes, forever engaged in unravelling the webs they wove. Like much else in human affairs, its defects are so deeply enmeshed in the system that wholly to disentangle them would quite kill it."

In the present case, it is apparent that the offending juror's statement that "this was not Randy's 1st time and he was about due for

the charge" concerned only a very small part of the jury's deliberation. The juror who supplied the affidavit made no further reference to the statement in her affidavit.

In addition, the offending juror did not explain what the juror meant when the juror stated that "this was not Randy's 1st time and he was about due for the charge." Did the juror mean that this was not Randy's first time attempting to drive home after a night of drinking? Or did the juror mean that this was not the first time that the police had stopped Randy for suspicion of DUI, but before the police never had sufficient evidence to charge Randy with DUI?

Further, the juror's statement that "he [Randy] was about due for the charge" was a mere opinion. It was not a fact. Whatever factual content that the other jurors gave to the offending juror's statement had to be supplied from their own speculation of what the offending juror's statement meant rather than from the statement itself. Finally, even if we were to accept Randy's characterization that the offending juror's statement referred to Randy drinking and driving on a previous occasion, there is no logical force in the statement tending to show that Randy was guilty of anything. Indeed, drinking and then driving is not illegal per se in Kansas; it is only driving with a certain blood alcohol concentration and driving while intoxicated to the extent that the driver cannot drive safely that are illegal under Kansas law. See 8-1567(a); *State v. Arehart*, 19 Kan. App. 2d 879, 882, 878 P.2d 227 (1994).

The cases where our Supreme Court has found prejudicial juror misconduct have included the introduction of objective evidence into deliberations that was not presented at trial. For example, our Supreme Court has found prejudicial juror misconduct where several jurors visited the scene of a collision and measured distances, *Kaminski v. Kansas City Public Service Co.*, 175 Kan. 137, 259 P.2d 207 (1953); and where one juror used a slide rule to determine the point of impact and other computations, *Barajas v. Sonders*, 193 Kan. 273, 392 P.2d 849 (1964). The extraneous evidence introduced in those cases was capable of corroboration and did not rest solely in a juror's subjective thoughts.

The State maintains that the offending jurors' statements in this case are even further removed from being statements of fact than those made in *Cook*, 281 Kan. 961. There, the defendant had presented an affidavit from a juror which stated: "During deliberations in this case, I heard another juror say that this case was a retrial. That juror also said that [the defendant] had been previously convicted of that same crime in the first trial." 281 Kan. at 966-67. Our Supreme Court held that the defendant was unable to show prejudice and found no abuse of discretion in the trial court's decision to deny the defendant's motion to recall the jury.

In reaching its determination in *Cook*, our Supreme Court discussed its decision in *State v. Farrar*, 103 Kan. 774, 176 Pac. 987 (1919). In *Farrar*, the defendant, in a motion for a new trial, had presented evidence that during deliberations one or more jurors had stated that the defendant had been convicted of first-degree murder at a previous trial. Determining that prejudice to the defendant had not been shown, our Supreme Court stated:

"A statement of the nature of the verdict at a former trial is not evidential. The fact stated adds nothing to the evidence respecting any contested issue. It may not even be interesting. It may be a matter of common knowledge. It does not naturally or necessarily tend to corrupt the deliberations of a jury, presumably regardful of their oaths and the instructions given by the court, and in any given instance it is the function of the trial court to determine whether or not it probably subverted their integrity and vitiated their verdict. In this instance this court agrees with the trial court that it is highly improbable the extraneous remarks influenced the jury to return an unwarranted verdict." 103 Kan. at 777.

As a result, our Supreme Court determined that a new trial was not warranted.

The offending jurors' vague statements in this case do not even rise to the level of those in *Cook* and *Farrar*. There were no statements of specific fact concerning Johnson's past conduct. As in *Farrar*, the juror's statements would not naturally or necessarily tend to corrupt the deliberations of a jury, presumably regardful of its oaths and the instructions given by the court. Johnson has not shown that the offending jurors' statements substantially prejudiced his right to a fair trial. The trial court was correct in its determination that the offending jurors' statements in this case do

not rise to the level of warranting a new trial. As a result, there is no abuse of discretion in the trial court's decision.

## II. Did the trial court fail to properly respond to a jury question?

Next, Johnson argues that the trial court failed to completely respond to the jury's question about the consequences of a hung jury.

K.S.A. 22-3420(3), which governs a jury's request for additional information after the start of deliberations, states:

"After the jury has retired for deliberation, if they desire to be informed as to any part of the law or evidence arising in the case, they may request the officer to conduct them to the court, where the information on the point of law shall be given, or the evidence shall be read or exhibited to them in the presence of the defendant, unless he voluntarily absents himself, and his counsel and after notice to the prosecuting attorney."

A trial court's decision to respond to a jury's request for additional information during deliberations is reviewed for an abuse of discretion. *State v. Murdock*, 286 Kan. 661, 680, 187 P.3d 1267 (2008). A trial court's decision to provide additional instruction to the jury when a question is submitted during deliberations will be upheld as long as the additional instruction is not coercive or otherwise objectionable. In other words, the court must determine whether the defendant's rights were prejudiced by the trial court's action in giving the instruction. *Murdock*, 286 Kan. at 680.

During deliberations, the jurors in this case submitted the following question: "What happens if we can't come to a unanimous verdict?" The trial judge initially responded as follows: "What happens is I declare a hung jury and you go home . . . ." The trial judge then asked the jury if it was deadlocked and further instructed the jury as follows:

"You've obviously been talking about this, working on it pretty hard for, I don't know, a couple hours. Is it your impression that more time is not going to help any, today you're basically helplessly deadlocked? Does that appear to be the case or not? (Pause)

"Let me put it this way: If I have you go back to the jury room and discuss that among yourselves, you can report to me whether you feel you're hopelessly deadlocked at that point. If you feel you are, let me know that. If you—if you want to go home and come back in the morning, let me know that. If you want to continue

on a while longer tonight, let me know that . . . But if you've discussed it and tried and are unable to come to a verdict simply tell me that and we'll go with that, okay? . . . I'll have you go back to the jury room, discuss what I have just ran through. Let me know what you want to do, okay?"

Thereafter, the jury asked for and was read some testimony presented at trial from Davidson. Approximately 53 minutes after the court instructed the jury on the unanimous verdict question, the jury returned a verdict of guilty.

Johnson contends that in responding to the jury's question, the trial court failed to address the legal consequences of an inability to agree on a verdict. Johnson maintains that the trial court should have instructed the jury in accordance with a portion of PIK Crim. 3d 68.12, which states: "If you fail to reach a decision on some or all of the charges, that charge or charges are left undecided for the time being. It is then up to the state to decide whether to resubmit the undecided charge(s) to a different jury at a later time."

Our Supreme Court has disapproved of the giving of PIK Crim. 3d 68.12 after jury deliberations are in progress. See *State v. Makthepharak*, 276 Kan. 563, 569, 78 P.3d 412 (2003); *State v. Struzik*, 269 Kan. 95, Syl. ¶ 6, 5 P.3d 502 (2000). In those situations, "such an instruction could exert undue pressure on the jury to reach a verdict." *Makthepharak*, 276 Kan. at 569.

Nevertheless, Johnson argues that the portion of PIK Crim. 3d 68.12 that he quotes was not coercive and should have been given. Johnson argues that this information about the consequences of a mistrial, in particular that the legal matter is not final, is important for a hold-out juror to fend off pressuring jurors.

Although Johnson was present when the trial court answered the jury's question, he did not request that the jury be instructed in accordance with the particular portion of PIK Crim. 3d 68.12 that he now argues should have been given. Instead, he remained silent while the trial court instructed the members of the jury to return to deliberations and determine whether they were deadlocked. It seems that the instruction now urged by Johnson could shift the focus of the jury's deliberation. Such an instruction, when given in the middle of jury deliberations, might cause jury members to un-

duly concentrate on the fact that Johnson might never be charged again for the alleged crime.

We find nothing in the trial court's response to the juror's question that would prejudice Johnson's rights in this case. The trial court accurately told the jury the consequences that would result if it was unable to reach a verdict, that is, that a hung jury would be declared. The trial court did not pressure the jury to reach a verdict within a certain amount of time or even to reach a verdict at all. The trial court simply told the jury to discuss the matter further and determine if it was unable to reach a unanimous verdict. There was nothing coercive in the trial court's response. As result, there was no abuse of discretion in the trial court's response to the jury's question.

### III. Did the trial court err in failing to inquire into the accuracy of the jury's verdict and in failing to ask whether the parties wanted the jury polled?

Next, Johnson argues that the trial court erred when it accepted the jury's verdict without inquiring into the accuracy of the verdict or questioning whether the parties wanted the jury polled. Johnson concedes that he never objected at trial to the trial court's failure to inquire into the accuracy of the verdict or to question whether the parties wanted the jury polled. Moreover, Johnson did not raise this issue in his motion for a new trial.

Generally, issues not raised before the trial court cannot be raised on appeal. *State v. Shopteese*, 283 Kan. 331, 339, 153 P.3d 1208 (2007). There are several exceptions to the general rule that a new legal theory may not be asserted for the first time on appeal, including the following: (1) the newly asserted theory involves only a question of law arising on proved or admitted facts and is finally determinative of the case; (2) the consideration of the theory is necessary to serve the ends of justice or to prevent denial of fundamental rights; and (3) the judgment of the trial court may be upheld on appeal despite its reliance on the wrong ground or assignment of a wrong reason for its decision. *State v. Hawkins*, 285 Kan. 842, 845, 176 P.3d 174 (2008).

Johnson asserts that this issue should be addressed on appeal because it raises a question of law and does not rely on disputed facts. Moreover, Johnson alleges that this issue involves the fundamental right to a unanimous jury verdict.

In order to address the merits of the State's argument, this court must interpret K.S.A. 22-3421. Interpretation of a statute presents a question of law over which an appellate court's review is unlimited. *State v. Storey*, 286 Kan. 7, 9-10, 179 P.3d 1137 (2008). The most fundamental rule of statutory construction is that the intent of the legislature governs if that intent can be ascertained. *Winnebago Tribe of Nebraska v. Kline*, 283 Kan. 64, 77, 150 P.3d 892 (2007). An appellate court's first task is to "ascertain the legislature's intent through the statutory language it employs, giving ordinary words their ordinary meaning." *State v. Stallings*, 284 Kan. 741, 742, 163 P.3d 1232 (2007).

K.S.A. 22-3421, which contains the general procedures for releasing a jury verdict, states:

"The verdict shall be written, signed by the presiding juror and read by the clerk to the jury, and *the inquiry made whether it is the jury's verdict.* If any juror disagrees, the jury must be sent out again; but if no disagreement is expressed, *and neither party requires the jury to be polled,* the verdict is complete and the jury discharged from the case. If the verdict is defective in form only, it may be corrected by the court, with the assent of the jury, before it is discharged." (Emphasis added.)

Johnson argues that under K.S.A. 22-3421, the trial court in this case should have inquired into whether both parties waived polling of the jury. The right to have a jury polled in Kansas is statutory and has been in existence for over 100 years. *State v. Holt*, 285 Kan. 760, 767, 175 P.3d 239 (2008). Quoting *State v. Panker*, 216 Kan. 347, 349, 532 P.2d 1073 (1975), our Supreme Court in *Holt* discussed the purpose of jury polling:

"Any party in a civil or criminal case has an absolute right to have the jury polled. [Citation omitted.] This practice requires each juror to answer for himself, thus creating individual responsibility and eliminating any uncertainty as to the verdict announced by the foreman. It also affords an opportunity for free expression unhampered by the fears or errors which may have attended the private proceedings. [Citation omitted.]"

Nothing in K.S.A. 22-3421 requires the trial court to determine whether parties wish to exercise their right to poll the jury. K.S.A. 22-3421 states that "if no disagreement is expressed, *and neither party requires the jury to be polled,* the verdict is complete and the jury discharged from the case." (Emphasis added.) The language in K.S.A. 22-3421 places the burden on the parties to require polling of the jury.

Other jurisdictions have held that a party waives the right to have the jury polled when he or she fails to make a timely request:

"[I]t is generally held that the failure to make a timely demand or request for a poll, where a reasonable opportunity to do so has been afforded, operates as a waiver of the right. Conversely, a waiver will not be implied from a failure to demand or request a poll where the defendant has not had a reasonable opportunity to make such demand or request." Annot., 49 A.L.R.2d 619, § 8 (Waiver or Loss of Right).

See *State v. James P.,* 96 Conn. App. 93, 899 A.2d 649 (2006) (failure to make timely demand or request for jury poll, where there has been reasonable opportunity to do so, constitutes waiver of right); *Sheahan v. Dexter,* 136 Ill. App. 3d 241, 252, 483 N.E.2d 402 (1985) (any complaint about failure to poll jury is waived by party's failure to request such poll).

Here, because Johnson never requested polling of the jury, he waived his right to have the jury individually polled. In the absence of a request by either party to poll the jury, we determine that the trial court did not err in failing to individually poll the jury.

Johnson also argues that the trial court violated K.S.A. 22-3421 when it failed to inquire into the accuracy of the verdict read in court. K.S.A. 22-3421 is clear in its directive that an inquiry is to be made into whether the verdict is that of the jury. In the instant case, however, the trial court merely read the verdict into the record without asking whether the verdict was that of the jury.

The State argues that it was unnecessary for the trial judge to make further inquiry of the jury's verdict in this case because the record clearly indicates that the presiding juror handed the verdict to the trial judge. The State asserts that such personal delivery of the verdict by the presiding juror, who is purportedly representing

the jury and its decision, ensures that the verdict is in fact that of the jury as a whole.

If this court were to accept the State's argument, the language in K.S.A. 22-3421 requiring an inquiry to be made into whether the verdict is the jury's verdict would be mere surplusage. Under the State's argument, the inquiry would never need to be made because the verdict form is written and signed by the presiding juror. The signature of the presiding juror, who is purportedly representing the jury and its decision, would ensure that the verdict is in fact that of the jury as a whole.

Nevertheless, the legislature has explicitly included the requirement in K.S.A. 22-3421 that inquiry be made as to whether the verdict is the jury's verdict. This requirement accomplishes the important purpose of ensuring that the jury's verdict is unanimous. As the Second Circuit Court of Appeals stated in *United States v. Pleva*, 66 F.2d 529, 532 (1933): "No person may lawfully be convicted by a jury unless every juror actually agrees that upon the evidence and the law of the case that person is guilty. If a verdict of guilty is returned for any other reason, it is a perversion of the constitutional guaranty to a jury trial."

Similarly, under K.S.A. 60-248(g), after the verdict is written, signed by the presiding juror, and read by the clerk to the jury, this subsection requires the court to ask the jury whether it is *their* verdict. The legislature's use of the pronoun *their* in the subsection indicates that the legislature is treating the collective noun jury as plural, that is, the jury is functioning as individuals. Both K.S.A. 22-3421 and K.S.A. 60-248(g) require that each juror agree with the verdict. Consequently, this affords no basis for the State to contend that the signature of the presiding juror ensures that the verdict is that of the jury.

Both K.S.A. 60-248(g) and K.S.A. 22-3421 incorporate the common-law rule that a verdict is of no force or validity until it is affirmed by the jury in open court. See *Rigg v. Bias*, 44 Kan. 148, 24 Pac. 56 (1890) (recognizing that verdict must be affirmed by jury in open court to have force and validity); *Young v. Seymour*, 4 Neb. 86 (1875). In *Bishop v. Mugler*, 33 Kan. 145, 5 Pac. 756 (1885), our Supreme Court recognized that the determination of

a jury, although not formally stated in a verdict and signed and sealed, is not final with the jury, but it remains within the jury's control, and subject to any alteration or amendment the jury decides to make, until it is actually rendered in court and recorded. Our Supreme Court further stated that it is well established that any member of the jury is at liberty to withdraw his or her consent from a verdict already agreed upon, at any time before the verdict is received and recorded. 33 Kan. at 147; see also *Weeks v. Hart*, 24 Hun. 181, 181-82 (N.Y. 1881) ("The right of a juror to dissent from a verdict which he had before agreed, is not lost until the verdict has been recorded. Any expression of dissent before that has been done, destroys the unanimity which is essential to make a verdict valid. [Citation omitted.]").

By requiring inquiry as to whether the verdict is the jury's verdict, K.S.A. 22-3421 gives jury members the opportunity to express disagreement with or dissent from the verdict in open court. When such disagreement is expressed, the trial court cannot be satisfied that the verdict is truly unanimous and must send the jury back for deliberations. This is reflected in the language of K.S.A. 22-3421. Immediately after the language requiring the inquiry to be made, K.S.A. 22-3421 states: "If any juror disagrees, the jury must be sent out again." K.S.A. 22-3421 further states that "if no disagreement is expressed, and neither party requires the jury to be polled, the verdict is complete and the jury discharged from the case." Thus, until the inquiry is made and the trial court is satisfied that the verdict is truly unanimous, the verdict is not complete.

Indeed, in *State v. Scott*, 1 Kan. App. 748, 42 Pac. 264 (1895), it was held that a verdict of acquittal was not complete where the evidence failed to show that the statutory requirements that the verdict be read by the clerk to the jury and the inquiry made as to whether it was their verdict had been accomplished. In that case, the defendant was charged with nuisance. The jury originally returned a verdict of not guilty. Upon returning the verdict, however, the foreman stated that the verdict was an error and that he had signed the wrong blank. A polling of the jury was then demanded, and each juror stated that the verdict was not his verdict. The trial court returned the jury for further consideration of the verdict.

The jury later returned a guilty verdict. The defendant argued, however, that there had been a former acquittal.

In rejecting the defendant's argument, the *Scott* court looked to the language of paragraph 4379 of General Statutes of 1889. That statute, which was the predecessor to K.S.A. 22-3421 and contained nearly the same language as the current statute, stated:

"The verdict shall be written, signed by the foreman and read by the clerk to the jury, and the inquiry made whether it is their verdict. If any juror disagrees, the jury must be sent out again; but if no disagreement be expressed, and neither party requires the jury to be polled, the verdict is complete and the jury discharged from the case."

Determining that the evidence failed to show that the statute had been complied with, the *Scott* court stated:

"This paragraph clearly requires that the verdict must be read by the clerk to the jury, and the inquiry made whether it is their verdict before the verdict is complete. The evidence fails to show that this was done; therefore, the defendant fails to prove a complete verdict of acquittal." 1 Kan. App. at 750-51.

Thus, *Scott* indicates that an inquiry must be made as to whether the verdict is the jury's verdict before the verdict is complete.

There appear to be no Kansas cases that address an issue like the one encountered in this case: Does K.S.A. 22-3421, which requires that an inquiry be made to the jury whether the verdict represents the jury's verdict, mandate that a verdict be reversed when the trial court neglects to make an inquiry to the jury as required by K.S.A. 22-3421, and when the appellate record establishes that there is a question whether the verdict represents the agreement of the individual jurors? In *Holt*, 285 Kan. 760, however, our Supreme Court recently addressed the issue of whether jury polling violated the defendant's right to an impartial and unanimous jury. Although distinguishable, the *Holt* case is instructive on whether a defendant has shown harm in the procedure used in accepting the jury's verdict under K.S.A. 22-3421.

In *Holt*, the defendant argued that his right to an impartial and unanimous jury was violated when the court clerk asked each juror during polling, "Is this the verdict of the jury?" instead of, "Is this your [*i.e.*, individual] verdict?" 285 Kan. at 766. The defendant did

not object to this question, which prevented the trial court from having any chance to cure any alleged defect in the polling before the jury was discharged. The defendant argued on appeal that his argument should be addressed because consideration of his theory was necessary to serve the ends of justice. In declining to address the defendant's argument under this exception, our Supreme Court stated:

"Application of this exception is not warranted under the facts of this case, however, because Holt has failed to show that the polling procedure, *e.g.*, the clerk's question, actually harmed him. We first note that the jury was given an instruction that its verdict must be unanimous; indeed, it was the last instruction given to the jury, stating, 'The person selected [as presiding juror] will . . . speak for the jury in court and will sign the verdict *upon which you agree.* . . . Your agreement upon a verdict *must be unanimous.*' (Emphasis added.) The jury is presumed to follow the instructions. [Citation omitted.] After the verdict was read, the presiding juror, in response to the court's question, confirmed in the jury's presence, that the verdict was the jury's and that the verdict was unanimous. Each juror then individually stated that this was the jury's verdict. There is simply no evidence suggesting that Holt received anything other than a unanimous verdict from an impartial jury, *i.e.*, no comments before the jury was dismissed and no posttrial affidavits from jurors or defense counsel to support Holt's allegations." 285 Kan. at 770.

Our Supreme Court concluded that because the defendant failed to timely object to the polling, he did not preserve the issue for appeal. 285 Kan. at 771.

This case differs from *Holt* in that the record in this case calls into question the unanimity of the verdict. Although the jury in this case was given an instruction like the one in *Holt*, there was no confirmation in open court that the jury's verdict was unanimous. Moreover, the record contains two posttrial affidavits from jurors indicating that they did not feel the verdict was correct and truly unanimous. Although the jurors' statements cannot be used to directly impeach the verdict under K.S.A. 60-441, they do show problems with the unanimity of the verdict that could have been addressed by adherence to K.S.A. 22-3421.

Specifically, juror C.M. listed the following reasons as to why she did not feel the verdict was correct and truly unanimous:

"4. Felt very rushed and very pres[s]ured at the end.

"5. There were two of us not wanting to vote guilty.

. . . .

"8. The other jurors said let's make up our minds now! It's getting late, and nobody wants to come back tomorrow. And no matter what myself and the other juror said they would not change their minds."

In addition, juror S.S. listed the following reasons as to why she did not feel that the verdict was correct and truly unanimous:

"5. At the end some of the jurors just wanted to get home and decided Randy was guilty. I was not totally convinced that the police had proved his guilt of unsafely operating a motor vehicle. . . .

. . . .

"8. I felt rushed at the end to agree with a guilty verdict so the jurors could go home."

The jurors' statements call into question whether a truly unanimous verdict was reached in this case. If the inquiry had been made under K.S.A. 22-3421 and no jurors expressed disagreement or dissent with the verdict, the trial court and this court could be satisfied that the verdict was unanimous. Because the inquiry was never made in this case, however, any conclusion concerning the unanimity of the verdict at this point is speculation. In other words, to say that juror S.S. or juror C.M. would not have spoken up in open court to express disagreement with the verdict is pure conjecture at this late stage.

We draw guidance from this court's holding in *State v. Langley*, 8 Kan. App. 815, 57 Pac. 556 (1899), that a verdict will not be legally effective unless agreed to by all of the jurors in open court. In *Langley*, the jury had returned their verdict. The verdict was handed to the trial court by the foreman. When the trial court stated that the jury had evidently made a mistake in their verdict, one of the jurors shouted that the verdict was a compromise verdict. The trial court told the jury to return to the jury room and to correct the verdict in certain particulars. The jury later returned into court with the verdict corrected. The *Langley* court held that "[w]e think the foregoing facts did not vitiate the verdict. *No complaint concerning the verdict was made by any juror after it was returned the second time*." (Emphasis added.) 8 Kan. App. at 816.

*Langley* clearly shows that a verdict will not be legally effective unless agreed to by all of the jurors in open court.

The statutory mandate under K.S.A. 22-3421 and K.S.A. 60-248(g) requiring the trial court to ask the jury in open court whether the verdict is their verdict is a safeguard to prevent error or misunderstanding. Because K.S.A. 22-3421 gives a juror a chance to express a last minute dissent, it cannot be said that Johnson was not prejudiced by the trial court's failure to inquire into whether the jury had agreed with the published verdict. As a result, the trial court's failure to follow the statutory mandate of K.S.A. 22-3421 to inquire as to whether the verdict was the jury's verdict amounted to reversible error in this case.

Because we have determined that there was reversible error in this case, it is unnecessary to address Johnson's remaining argument concerning the admission of his breath test refusal into evidence.

Reversed and remanded for a new trial.