NOT DESIGNATED FOR PUBLICATION

No. 120,457

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

BILLY PAUL BROWN,
*Appellant*.

MEMORANDUM OPINION

Appeal from Seward District Court; CLINT B. PETERSON, judge. Opinion filed April 10, 2020.
Affirmed.

*Rick Kittel*, of Kansas Appellate Defender Office, for appellant.

*Russell W. Hasenbank*, county attorney, and *Derek Schmidt*, attorney general, for appellee.

Before LEBEN, P.J., GARDNER, J., and MCANANY, S.J.

PER CURIAM: While Billy Paul Brown was on probation, he moved into an apartment where two others lived. Four days later, probation officers came for an unannounced home check. Brown let them come inside and search the apartment. In Brown's bedroom, which he shared with one other person, the officers discovered methamphetamine residue and two pipes in an orange bag. The officers also discovered two cigarettes containing marijuana in the living room. Based mainly on this evidence, a jury convicted Brown of possession of a controlled substance and possession of marijuana.

1

On appeal, Brown argues that the district court committed reversible error by: (1) giving Instruction 13, based on PIK Crim. 4th 52.150, telling the jury it didn't matter if others might have participated in the crime but not been convicted of it; (2) admitting evidence of the drugs and contraband found in Brown's apartment; and (3) denying Brown's motion for a new trial based on a juror's posttrial affidavit suggesting that a juror committed misconduct and that the verdict was not unanimous. We do not find any reversible error:

- Even if we assume Instruction No. 13 should not have been given, the failure to give it was harmless.
- Brown didn't raise the claim he is now pursuing in the motion he filed before trial to suppress the evidence found in the apartment, and he failed to object to the admission of this evidence at trial, so he can't now complain on appeal about its admission.
- The district court polled the jury to ensure that its verdict was unanimous, and the statements suggesting juror misconduct are either inadmissible or do not show conduct that would justify setting aside a jury verdict.

We therefore affirm the district court's judgment.

FACTUAL AND PROCEDURAL BACKGROUND

Billy Paul Brown shared an apartment in Liberal, Kansas with Jessica Winkler and Sandra Britt. Four days after Brown moved in, Probation Officer Keith Mains and Seward County Sheriff's Deputy Fred Small went to the apartment for an unannounced home check. Mains knocked on the door and Brown answered.

Mains testified at trial to the following: He told Brown that he wanted to conduct a random home check and asked for permission to enter. Brown said, "Come on in." Small also asked for permission to enter, which Brown granted, and then Small stood near the front door. Both of Brown's roommates, Britt and Winkler, were present.

2

Mains said that Brown gave him permission to enter the bedroom Brown shared with Britt. When Mains asked to look around, Brown said, "Of course." Brown said that the items in a built-in closet belonged to him. Mains said he saw an orange bag on one of the shelves in the closet. Mains asked Brown what was in the bag and Brown responded, "I don't know." Mains asked Brown if he could open the bag. Brown said he had nothing to hide and allowed Mains to look inside.

Inside the bag, Mains saw two glass pipes and clear baggies with what he believed to be methamphetamine. Mains said he placed these items on the bed and asked Small for assistance. Small testified that he asked for Brown's permission to enter his bedroom and Brown agreed. Small, Mains, and Brown went into the bedroom where they further examined these items.

Mains asked if he could search the rest of the house and Brown said, "Sure, go ahead." On the living room coffee table, Mains discovered two cigarette butts that appeared to be marijuana. Small said that all three residents of the apartment denied ownership of the contraband and blamed each other for possessing them. Brown, Winkler, and Britt were arrested and charged with possession of the contraband.

While officers continued to search the apartment, Seward County Sheriff's Deputy Allen Kirk kept an eye on Brown, Britt, and Winkler. Kirk testified that he overheard Brown repeatedly tell Britt "to just be honest and tell the truth, you know, that stuff is not mine." In response, Britt stated, "I don't need this shit tonight," and, "I don't have time for this."

KBI Chemist Harold Riddle testified that he tested the residue in one of the pipes and found methamphetamine. He tested one of two cigarette butts seized in the case and found tetrahydrocannabinol, the active ingredient of marijuana. Based on this evidence,

3

the jury found Brown guilty of possession of a controlled substance and possession of marijuana, but found him not guilty of possession of drug paraphernalia.

Brown filed a motion to suppress evidence before trial in which he claimed that the officers did not have reasonable suspicion for the house check. The trial court denied this motion. At sentencing, Brown's counsel raised another issue—a claim that Brown had been illegally placed on probation after he already served the underlying sentence in a separate case out of Seward County, case No. 13CR324. If that were true, Brown would have been subject to postrelease supervision but not probation. So his attorney argued that the officers had lacked authority to conduct the visit or the search and the court should have excluded this evidence.

The district court terminated Brown's probation in case No. 13CR324 and placed him on postrelease supervision. But the court rejected the claim that the evidence should have been kept out on this new basis because (1) Brown did not raise the issue in his pretrial motion to suppress and (2) "[t]he fact that the defendant should not have been on probation . . . doesn't affect the legality one way or the other of the search and the admissibility of the evidence."

Brown also filed a motion for a new trial based on a juror's statements after trial. Defense counsel stated at sentencing that S.W., the jury foreperson, approached counsel after trial and told her that he believed Brown was innocent and should not have been found guilty. The defendant filed an affidavit from S.W. stating that he had maintained during deliberations that Brown was not guilty. S.W. said that by 5 o'clock, the jurors were frustrated and ready to go home. The only other juror maintaining Brown's innocence switched his vote to guilty close to 5 p.m., leaving S.W. as the only not-guilty vote. S.W. said another juror told him that "possession is nine-tenths of the law." He also said other jurors told him "the majority rules" and since he was the only not guilty vote

4

he should switch his vote so everyone could go home. S.W. said, "I felt like I had no other choice, and I had to do what the other jurors were telling me."

Defense counsel subpoenaed S.W. to attend a court hearing, but the court vacated the subpoena. The district court denied the motion for new trial:

> "I'm not going to invade the province of the juror and jury at this time. [S.W.] was sworn in, agreed to follow the direction and orders of the court, the jury instructions. . . . [H]e said he voted guilty when I polled the jury following their verdict. . . . [W]hen it came time in the jury room during deliberations, he did vote and told me he voted guilty, and that made a unanimous verdict of guilty . . . ."

ANALYSIS

1. *Any Error in the Giving of Instruction No. 13 Was Harmless.*

Brown first argues that his conviction should be reversed because the court, without request by either party, gave Instruction No. 13 when it was not appropriate. This instruction, based on PIK Crim. 4th 52.150, stated: "It is not a defense that others who participated in the commission of the crime have or have not been convicted of the crime, any lesser degree of the crime, or some other crime based on the same act." Brown objected to this instruction at trial.

When a party objects to a jury instruction, but the district court uses it anyway, appellate courts review the instruction to see whether giving the instruction was legally or factually inappropriate, employing an unlimited review of the entire record. If the instruction was legally or factually inappropriate, the lower court committed an error. This court must then determine whether that error requires reversal. *State v. McLinn*, 307 Kan. 307, 317-18, 409 P.3d 1 (2018).

5

An instruction is factually appropriate if there is sufficient evidence, when viewed in the light most favorable to the requesting party, to support giving the instruction. *State v. Johnson*, 304 Kan. 924, 934, 376 P.3d 70 (2016). For Instruction No. 13 to be factually appropriate, then, there had to be evidence to show (1) that others participated in the commission of the crime and (2) that those individuals were or were not convicted of the same crime, any lesser degree of the crime, or some other crime based on the same act.

The jury heard that Britt and Winkler had been charged for the same crimes but nothing more. So Brown may be right that Instruction No. 13 was inappropriate because neither party presented evidence that his roommates were or were not convicted of any crime arising out of this incident. See *State v. Oduol*, No. 97,239, 2009 WL 743047, at *4-5 (Kan. App. 2009) (unpublished opinion) (determining that an instruction based on an earlier version of PIK Crim. 4th 52.150 was unnecessary without evidence indicating whether a co-conspirator had been convicted of a crime); *State v. Adams*, No. 109,925, 2014 WL 2871340, at *2-3 (Kan. App. 2014) (unpublished opinion) (same).

We will assume for the purpose of our decision that the instruction was factually inappropriate and should not have been given. Even so, we still must consider whether this assumed error requires reversal.

Brown first argues that the trial court committed a structural error justifying reversal without having to consider whether this error was harmless. Structural errors affect the very framework within which trial proceeds. *State v. Jones*, 290 Kan. 373, 382, 228 P.3d 394 (2010). Brown asserts that the court assumed the role of defendant and defense counsel, affecting the structure of the trial, by dictating a different theory of defense than his chosen theory. Brown's chosen theory of defense was that because he "had been in the apartment for such a short time . . . he did not know the contraband was even present in the house and, therefore, he could not have legally possessed it." Brown argues that Instruction No. 13 misled the jury to believe that Brown's actual defense was

6

guilt-based—that Brown and his roommates jointly possessed the drugs but he should not be found guilty because of what had happened (or had not happened) to his roommates.

We do not believe that the court took over the role of defense counsel. The instruction informed the jury of a defense Brown *could not* make, not what defense he was making. A defendant is entitled to have the court instruct the jury on the defendant's theory of defense if there is evidence to support that theory. But it does not follow that instructing on the unavailability of a defense the defendant did not raise violates this rule. *Adams*, 2014 WL 2871340, at *3. Because Instruction No. 13 did not impose a different theory of defense, the lower court did not assume the role of defendant or defense counsel and did not commit a structural error requiring reversal.

We next determine whether the error was harmless under one of two standards. If a constitutional right is implicated, the error must be "harmless beyond a reasonable doubt . . . [requiring] the highest level of certainty that the error did not affect the outcome." *State v. Ward*, 292 Kan. 541, 564, 256 P.3d 801 (2011), *cert. denied* 565 U.S. 1221 (2012). If no constitutional right is implicated, the court must be persuaded that there is no reasonable probability that the error will or did affect the outcome of the trial. 292 Kan. at 564.

Instruction No. 13 did not interfere with Brown's constitutional right to make his own defense, so no constitutional right is implicated and the lesser standard should apply. That means the State only has to show that there is no reasonable probability that the error affected the outcome of the trial.

The State argues that Instruction No. 13 could not have misled jurors into believing that Brown was relying on a guilt-based defense. Brown proposed his theory of defense throughout trial—in opening statements, during cross-examination, in his case-in-chief, and in closing arguments. So it would have been clear to the jury that Brown's

7

theory of defense was that he did not know what was in the house and the drugs must have belonged to someone else.

The court also gave Instruction No. 5, which reminds jurors of their obligation to presume innocence: the "State has the burden to prove the defendant is guilty beyond a reasonable doubt. The defendant is not required to prove he is not guilty. You must presume that he is not guilty unless you are convinced from the evidence that he is guilty."

At most, Instruction No. 13 implied that Britt and Winkler were not convicted for a crime arising out of this incident. But whether these individuals faced legal consequences was not relevant to a determination of whether the State had proven Brown's possession beyond a reasonable doubt. The jury also received standard instructions about what it takes to "possess" an item, and the defendant doesn't suggest those instructions were in error. We conclude that any error in giving Instruction No. 13 was harmless because there is no reasonable probability that it affected the trial's outcome.

2. *Brown Has Not Shown Error in the Admission of Evidence from the Apartment*.

Brown next argues that we must reverse his convictions because he was not lawfully on probation at the time of the search. According to Brown, the search would not have occurred if he were not on probation, so the court should have suppressed this evidence.

Brown and the State both assert that the proper standard of review for this suppression issue is the traditional two-part standard for analyzing motions to suppress. Under that standard, we first analyze whether the district court's factual findings are supported by substantial evidence—that is, evidence that a reasonable person would find

8

adequate to support a conclusion. We next review the district court's ultimate legal conclusions independently. Both parties agree that there aren't any factual disputes, so this court would traditionally leap to the second step and review the court's legal conclusions de novo. *State v. Patterson*, 304 Kan. 272, 274, 371 P.3d 893 (2016).

But there's a bit of a trick to that step here. While Brown did ask the trial court before trial to suppress this evidence, he did not do it on the basis he asserted *after* trial and again on appeal. That's an important point.

We have repeatedly explained that a defendant cannot assert some basis for exclusion of evidence in a motion to suppress and then argue different grounds for suppression at a later stage of the proceeding. *State v. Farner*, No. 118,839, 2019 WL 1496139, at *4 (Kan. App. 2019) (unpublished opinion) (determining that defendant, who raised a new suppression issue for the first time on appeal, did not preserve this issue by filing a motion to suppress before trial on different grounds), *rev. denied* 310 Kan. ___ (December 18, 2019); *State v. McLarty*, No. 117,392, 2018 WL 1546282, at *6 (Kan. App. 2018) (unpublished opinion); *State v. Snell*, No. 115,478, 2017 WL 3001276, at *3 (Kan. App. 2017) ("Nothing in the statute permits us to entertain such a motion after trial for the first time on appeal."), *rev. denied* 307 Kan. 993 (2018). The matter must be raised before the trial court—and before the evidence is presented—to give the trial judge a chance to keep the evidence from being presented to the jury. See K.S.A. 2019 Supp. 60-404; *State v. King*, 288 Kan. 333, Syl. ¶ 5, 204 P.3d 585 (2009).

Though Brown submitted a motion to suppress before trial, that motion only argued that the probation officer and sheriff's deputy did not have reasonable suspicion to search as required by K.S.A. 2019 Supp. 21-6607(c)(5). Brown did not argue before or at the trial that he had been improperly put back on probation and therefore the search should never have occurred. He didn't raise that argument—the only one he is pursuing on appeal—until a hearing at which the court considered his motion for new trial, his

9

motion for judgment notwithstanding the jury's verdict, and his motion in case No. 13CR324 to terminate the probation.

Brown recognizes this may be a problem, so he argues that his defense counsel *intended* to raise this suppression issue before trial because she filed a motion to terminate probation in case No. 13CR324 before trial. At a pretrial hearing, the district court stated it was going to "go ahead and continue the motion you filed to terminate probation in 13-CR-324 until we have a resolution of the defendant's new case." Brown now argues that defense counsel could not fully raise this suppression issue until the court ruled on Brown's motion to terminate probation. But Brown did not object at trial to the admission of the evidence from the apartment on the basis he now asserts on appeal.

We acknowledge that there is one gap in our record as compared to what the trial court had before it: the file for this case on appeal does not have a copy of Brown's motion to terminate probation in case No. 13CR324. So it is unclear whether Brown's counsel made any connection between the termination of probation and the motion to suppress. All we know is that Brown did not mention the termination of probation in his motion to suppress in this case and his attorney did not raise the matter as an evidentiary objection at trial.

When Brown's attorney belatedly raised the matter at a posttrial hearing, the district court noted that it had not been timely raised before or at trial: "I don't remember that being raised specifically in the motion to suppress, that the defendant should not have been on probation." The court added that it agreed with the prosecutor that "that issue is far more appropriately to be brought up in a [pretrial] motion to suppress."

In essence, then, what happened in the trial court is that the court determined that Brown could not raise this evidentiary objection for the first time after trial. That's a legal

conclusion that we review de novo, but it's correct on the law. See K.S.A. 2019 Supp. 60-404.

It's also possible that the defendant's posttrial argument on this issue really fits better within his motion for a new trial. The district court also recognized that possibility: after saying that "that issue is far more appropriately to be brought up in a [pretrial] motion to suppress," the court said that it was "going to deny the motion for a new trial based upon point one of the defendant's argument." While the defendant's written motion had been based only on the juror affidavit from S.W., the court may have concluded that the oral argument about whether Brown had properly been on probation also could serve as a basis for a new trial. If so, the court clearly denied a new trial on that basis.

If we apply the standard of review for denial of a new-trial motion, we review that only for abuse of discretion. A court abuses its discretion if (1) no reasonable person would take the view adopted by the trial court; (2) it is based on an error of law; or (3) it is based on an error of fact. *Ward*, 292 Kan. at 550.

We find no abuse of discretion here. Brown should have raised the issue before the evidence was presented to a jury. K.S.A. 60-404 provides that a "verdict or finding shall not be set aside, nor shall the judgment or decision based thereon be reversed," because the court erroneously admitted evidence unless there is a timely and specific objection to this evidence in the record. It is not an abuse of discretion to deny a new trial where the defendant failed to contemporaneously object to admission of the evidence. *Estate of Mills v. Mangosing*, 44 Kan. App. 2d 399, 427-28, 238 P.3d 293 (2010) (finding no abuse of discretion in trial court's denial of a new trial where the party failed to contemporaneously object to testimony).

11

3. *The District Court Did Not Err by Denying a New-Trial Motion Based on a Claim of Juror Misconduct.*

Last, Brown argues that the district court committed reversible error by denying his motion for a new trial. Brown asserts that (1) the court violated his right to a unanimous jury verdict and (2) the jury committed misconduct, substantially prejudicing his right to a fair trial. He asks this court to reverse his convictions or remand the case to the district court for an evidentiary hearing to flesh out the jurors' testimony. As we have just discussed, we reverse the denial of a new-trial motion only for abuse of discretion.

*Failure to Inquire About Juror Unanimity*

Criminal defendants have a statutory right to a unanimous jury verdict. *State v. Cheffen*, 297 Kan. 689, 697, 303 P.3d 1261 (2013); see K.S.A. 22-3421; K.S.A. 22-3423(1)(d). Brown argues that the district court violated his right to a unanimous jury verdict on two grounds: (1) that S.W.'s statements in his post-trial affidavit show that the jury's guilty verdict was not unanimous and (2) that the court failed to inquire whether the verdict was unanimous as required by K.S.A. 22-3421.

Generally, courts may consider statements jurors made during deliberations but cannot consider how these statements affected a juror's decision in reaching a verdict. K.S.A. 60-444(a); K.S.A. 60-441; *State v. Johnson* 40 Kan. App. 2d 1059, 1065-66, 198 P.3d 769 (2008). That said, even juror statements that are inadmissible under K.S.A. 60-441 may be heard to show problems with the unanimity of the verdict. *Johnson*, 40 Kan. App. 2d at 1079.

S.W. stated that he felt pressured to return a guilty verdict because he was the only holdout and the other jurors wanted to go home. The other jurors told him "majority rules" and that he should switch his vote to guilty. These statements suggest problems

12

with the unanimity of the verdict. K.S.A. 22-3421 provides that after the jury's verdict is read in court, "the inquiry [shall be] made whether it is the jury's verdict." If the court fails to inquire into the verdict as required by K.S.A. 22-3421, the court may abuse its discretion by denying a motion for new trial. *Johnson*, 40 Kan. App. 2d at 1081 (holding that the court committed reversible error by failing to inquire into the jury's verdict where post-trial juror affidavits suggested that the verdict was not unanimous).

Here, after the verdict was announced, the court immediately polled each individual juror in open court, asking, "Is this your verdict?" Since "your" could refer to each juror individually or to the group as a whole, there's some ambiguity. But all jurors, including S.W., answered, "Yes." In *Johnson*, the court stated that "[i]f the inquiry had been made under K.S.A. 22-3421 and no jurors expressed disagreement or dissent with the verdict, the trial court and this court could be satisfied that the verdict was unanimous." 40 Kan. App. 2d at 1079-80.

If we interpret "your" to mean each juror individually, then the judge polled the jury to be sure that each juror agreed with the verdict. We have acknowledged that polling accomplishes the same purpose as the inquiry called for under K.S.A. 22-3421. *State v. Dunlap*, 46 Kan. App. 2d 924, 934, 266 P.3d 1242 (2011). The purpose of an inquiry is to "give the jurors an opportunity to express dissent from or disagreement with the verdict." *Johnson* 40 Kan. App. 2d at 1061. This "ensure[s] jury unanimity and finality of the verdict." *Dunlap*, 46 Kan. App. 2d at 934. The court gave S.W. a chance to express his dissent. He chose not to do so. Because the district court polled the jury and no juror expressed dissent, the district court and this court can be satisfied that the verdict, when rendered, was unanimous.

*Juror Misconduct*

The remaining claim in support of the new-trial motion was based on juror misconduct. But most of S.W.'s statements are inadmissible and any remaining statements do not amount to juror misconduct.

A court abuses its discretion when it denies a motion for new trial based on juror misconduct if the defendant can show that (1) an act constituted misconduct and (2) the misconduct substantially prejudiced the defendant's right to a fair trial. "The procedure for and limitations on challenging the validity of a jury's verdict are statutory." Evidence of what jurors said during deliberations can be considered under K.S.A. 60-444(a). *Johnson*, 40 Kan. App. 2d at 1064-66. But "evidence about what effect [these statements] had on [other jurors'] mental processes in reaching the verdict is barred by K.S.A. 60-441." 40 Kan. App. 2d at 1066.

Brown asserts that S.W.'s statements show juror misconduct because the jurors disregarded jury instructions. Brown argues that the jurors' statements pressuring S.W. to change his vote and that "the majority rules" show that S.W. and other jurors disregarded Instruction No. 14, which stated, "Your agreement on a verdict must be unanimous." Brown also argues that jurors violated Instruction No. 15, which said that "each juror should vote according to their honest judgment . . . . It is your duty as jurors to consult with one another and deliberate with a view of reaching an agreement if you can do so without violating your individual judgment." Last, Brown argues that the statement "possession is nine-tenths the law" had no basis in any of the jury instructions.

We think it unlikely that these statements would constitute juror misconduct. Most of the statements show an attempt to convince S.W. to change his vote. Attempts to convince other jurors to vote against their better judgment are part of the jury-deliberation process. *State v. Jones*, 29 Kan. App. 2d 936, 939-40, 34 P.3d 82 (2001). The

14

statement that "possession is nine-tenths of the law" merely shows one juror's understanding of the law. But the primary problem in Brown's argument is that S.W.'s key statements aren't admissible for the purpose of attacking the jury's verdict.

K.S.A. 60-441 provides that in any inquiry as to the validity of a jury's verdict, "no evidence shall be received to show the effect of any statement, conduct, event or condition upon the mind of a juror as influencing him or her to assent or dissent from the verdict . . . or concerning the mental processes by which it was determined." S.W.'s statements that he believed Brown was not guilty and felt pressured to change his vote are squarely within that rule—statements or conduct influencing S.W. or concerning the mental processes by which he voted—and are barred by K.S.A. 60-441. See *State v. Kaiser*, 260 Kan. 235, 252, 918 P.2d 629 (1996), *overruled on other grounds by State v. Gonzalez*, 282 Kan. 73, 145 P.3d 18 (2006) (determining that a juror's statements that she was told "majority rules" and was pressured to change her vote could not be considered under K.S.A. 60-441); *State v. Mitchell*, 234 Kan. 185, 191, 672 P.2d 1 (1983) (determining that consideration of a juror's affidavit claiming she was under a lot of pressure from other jurors to change her vote was barred by K.S.A. 60-441); *Johnson*, 40 Kan. App. 2d at 1079 (determining that a juror's statements that she "'[f]elt very rushed and very pres[s]ured at the end'" could not be considered under K.S.A. 60-441).

So too with the statement a juror is said to have made that "possession is nine-tenths of the law." That statement is offered only to show how it influenced other jurors or affected the mental processes jurors used to determine the verdict. That too goes into forbidden ground under K.S.A. 60-441. Because these key statements in S.W.'s affidavit are inadmissible under K.S.A. 60-441, the district court did not abuse its discretion in denying the motion for new trial.

We affirm the district court's judgment.

15